## BUSH AND HOWARD *vs.* CUSHMAN.

1. A mortagor who procures a third party to purchase a mortgage given by him and receives the whole proceeds, will not be permitted to assail its validity.

2. The assignee of a mortgage or any other chose in action, takes it subject to all equities and defences existing between the original parties at the time of the assignment. No rights accruing after the assignment, or defences springing from defaults, or even fraud of the assignor, committed subsequent to the assignment, and which had no existence, and were simply possibilities at the time of the assignment, can affect the assignee.

On final hearing on bill, answer and proofs.

*Mr. Leon Abbett,* for complainants.

*Mr. W. S. Whitehead,* for defendant.

THE VICE-CHANCELLOR.

There are two unanswerable objections to the defence interposed in this case : First, that the complainants purchased the mortgage at the request of the defendant, and he cannot, therefore, be permitted to assail its validity ; and second, the breach of contract imputed by the defendant to the assignor, and upon which his whole defence rests, was committed subsequent to the assignment of the mortgage.

The mortgage sought to be foreclosed was made August 25th, 1873, by the defendant, Robert M. Cushman, to William A. Ellis and Clarence M. Johnson, pursuant to an agreement bearing date August 26th, 1873, made by the defendant and his brother William, under the name of R. M. Cushman & Co., and the mortgagees, under the name of W. A. Ellis & Co., whereby the last-named firm agreed to advance to R. M. Cushman & Co. $5000 on that day, to be secured by the mortgage in suit, and also the further sum of $10,000, at such times and in such amounts as they might desire, to be secured by a mortgage on their real and personal property in Texas, to enable them to start and carry on the hide and tallow business in Aranzas county, Texas. The agreement also contained a contract of purchase by W. A. Ellis & Co. of all hides and tallow, at certain fixed prices, to be made by R. M. Cushman & Co. during the following season, embracing the period between September 1st, 1873, and February 1st, 1874. The defendant alleges that W. A. Ellis & Co. fraudulently refused to make the additional advance of $10,000, or any part of it, and to receive and pay for the hides and tallow delivered to them, except the first lot, and that, in consequence of their breach of contract, R. M. Cushman & Co. have sustained a loss of over $12,000.

The defendant claims that it was well understood by both parties, that the advance of $5000 would be of no advantage or benefit to R. M. Cushman & Co., unless W. A. Ellis & Co. accepted the hides and tallow, according to the contract, and made the advance of the additional $10,000 when required ; that the venture was for the joint benefit of both parties, and

that it was obvious from the outset it could only be made successful by the fulfillment of the contract by both; that the giving of the mortgage in suit was merely an initiatory step in the general scheme, and W. A. Ellis & Co. having, by their breach of faith, made the venture ruinous to R. M. Cushman & Co., would not, if they were complainants, be permitted to enforce the mortgage. It is also claimed that the mortgage in the hands of the complainants is subject to all the defences and equities which might be invoked against it, if W. A. Ellis & Co. were seeking to collect it, whether they arose prior or subsequent to the assignment.

The proofs establish, beyond all dispute, that prior to the execution of the mortgage, the defendant applied to the complainant, Myron P. Bush, to lend $5000 to W. A. Ellis & Co., on the mortgage, and take an assignment of it, and exhibited to him an abstract of his title to the mortgaged premises; that Mr. Bush declined to make the loan until a further search of the title had been made, and the mortgage had been approved by counsel; that the defendant thereupon retained a lawyer, selected by Mr. Bush, who, in company with the defendant, examined the mortgaged premises, and also made a search of the title. He subsequently passed the title and approved the security. The assignment to the complainant was executed, and the money paid, in the presence of the defendant; and immediately after, and while all the parties were still in the office of the counsel, W. A. Ellis & Co. passed to the defendant their check for the amount loaned by the complainants. The contract between R. M. Cushman & Co., and the assignment to the complainant, bear the same date.

These facts clearly prove the complainant invested his money in the purchase of the mortgage, through the procurement of the defendant. In fact, he made the sale and received the whole proceeds. He cannot, therefore, be permitted to assail its validity. The doctrine of equitable estoppel, as it is called, has its foundation in the plainest principles of natural justice. It will not permit a person, either by word or act, to represent a security issued by him to be good, and thereby

induce another to give his money for it, and then, when he is required to pay it, repudiate the truth of his representation and escape its payment, by showing, as between himself and the person to whom it was issued, it was invalid. No reference to books is necessary in vindication of a principle so clearly fundamental in every system of laws framed to promote justice. I refer to the following authorities simply to show how the doctrine has been applied : *Martin* v. *Righter,* 2 *Stockt.* 525 ; *Lee* v. *Kirkpatrick,* 1 *McCarter* 267 ; *Den* v. *Baldwin,* 1 *Zab.* 403 ; 2 *Smith's Lead. Cas.* 647, 660; *Story's Eq. Jur.*, § 1542.

But had the defendant had no connection with the transfer of the mortgage to the complainants, I am at a loss to discover upon what principle he could invoke against the complainants the default or breach of contract of the assignor, committed subsequent to the transfer. Unquestionably, the assignee of a mortgage, or any other *chose in action,* takes it subject to all equities and defences existing between the original parties at the time of the assignment, but I do not understand that this rule embraces equities or defences springing from defaults, or even fraud of the assignor, committed subsequent to the assignment, and which had no existence, and were simply possibilities, at the time of the assignment. The rule excludes defences and rights accruing after the assignment. *Cornish* v. *Bryan,* 2 *Stockt.* 146 ; *Losey* v. *Simpson,* 3 *Stockt.* 253 ; *Coster* v. *Griswold,* 4 *Edwards' Ch.* 374, *marg'l ; Murray* v. *Lylburn,* 2 *John's Ch.* 442 ; 2 *Lead. Cas. in Eq.*, *pl.* 2, 238. There can be no doubt the mortgage was a perfect security at the time the complainants' money was passed to the defendant, and the transfer of the mortgage was made. No subsequent act or default of the assignor could impair or destroy it.

The complainants are entitled to a decree. I will so advise.