### John D. Cregar

*v.*

### Harmon H. Cramer and others.

A judgment at law was recovered by the complainant against the defendant and one M., on a joint and several promissory note given by them to complainant, for a partnership debt. At the defendant's repeated requests, and on his promise to pay one-half of the judgment and costs if he would do so, the complainant obtained from M. payment of one-half and released him from all liability on the judgment. —*Held*, that the defendant should be enjoined from taking advantage at law of such release to cancel the judgment, and thereby avoid the payment of his share.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. T. Bird*, for complainant.

*Mr. R. S. Kuhl*, for defendant Cramer.

25

Cregar *v.* Cramer.

THE CHANCELLOR.

The complainant seeks by this suit to restrain the defendant, Harmon H. Cramer, from taking advantage of a release given by the former to William McCatharn, on the 25th of April, 1875, by which, in consideration of the payment to him of $267.65, he released McCatharn and his lands, and land conveyed away by him, from a judgment recovered by the complainant against McCatharn and Cramer, in the Hunterdon circuit court, on the 18th of June, 1874. The consideration of the release was one-half of the amount of the judgment and interest, and sheriff''s execution fees. He alleges that the release was given in pursuance of a request on the part of Cramer that he would collect one-half of the judgment from McCatharn, and Cramer's promise that, if the complainant would do so, he would at once pay the balance of the judgment. The release was given in substitution for a receipt and discharge from the judgment given by the complainant's attorney to McCatharn, on the paymentof the money, but which was not satisfactory to the counsel of the latter.

The judgment was recovered on a joint and several promissory note given by McCatharn and Cramer to the complainant, on the 22d of October, 1873, payable five months after date, for $432.51 with interest. Though the answer of Cramer substantially alleges that he was a mere surety upon the note, yet it clearly appears that such was not the fact, but that it was given for a partnership debt, due from him and McCatharn to the complainant, for goods sold by him to them. Mr. Sanderson, the complainant's attorney in the suit in which the judgment was recovered, testifies that he had several conversations with Cramer after the judgment was recovered and levies made under the execution thereon; that in one of them, which took place in March, 1875 (the judgment was, as before stated, recovered in June, 1874), Cramer expressed a wish that he would get McCatharn to pay half of the judgment, and promised that if he would do so, he would himself pay

the other half.   He mentions the place where the conversation took place, and it is enough to say that there is corroboration of his testimony in that of Cramer himself.   Mr. Sanderson testifies that in the various conversations which he had with Cramer on the subject of the judgment, the latter urged him to make haste to compel McCatharn to pay his half of the judgment, giving as his reason his apprehension that the latter was in failing or doubtful circumstances, and promised that, if he would get McCatharn to pay half, he would himself pay the balance.   Cramer himself appears to have repeatedly urged the complainant in like manner, to collect half of the judgment from McCatharn, making the same promise, and stating that half of the judgment was his just share to pay.

Lambert Sutton, sworn for Cramer, testifies that the latter said that "one-half of the note was his," and that he "wanted" the complainant "to make the other half out of McCatharn." He also says, corroborating the complainant, that in a conversation circumstantially sworn to by the latter, Cramer said to the latter that he "must make the half of the money out of McCatharn, or after a while the stuff" (referring to McCatharn's personal property, which had been levied on under the execution) "would get away and he would have it all to pay; that he was ready to pay his half at any time." Moreover, McCatharn swears that, in a settlement between him and Cramer, it was agreed that each of them should pay half of the note.

There is no room to doubt that the complainant accepted from McCatharn one-half of the amount of the judgment, in discharge of his liability thereon, in consequence of Cramer's repeated requests, and for the accommodation of the latter, and to secure him from loss, and on his promise that, if he would do so, Cramer would pay the balance, which he at the same time acknowledged he was, as between him and McCatharn, justly bound to pay.   The attempt on his part to take advantage of the release to procure the cancellation of the judgment (as he might at law, *Rogers* v. *Hosack's*

*Ex'r, 18 Wend. 319 ; Cheetham* v. *Ward, 1 Bos. & Pul. 630 ; Kirby* v. *Taylor, 6 Johns. Ch. 242*), and so avoid payment of the half which he had promised to pay, was in the highest degree inequitable.    He will be perpetually enjoined from applying for the entry of satisfaction of the judgment on the ground of the release, or the receipt and discharge, and from pleading or setting up them, or either of them, against his liability on the judgment, or as evidence of his non-liability, or that of his property, to the payment of the remaining half of the amount of the judgment and interest, and it will be declared that the release and receipt and discharge will not operate to discharge the judgment as against him, or to discharge his property from the judgment or execution issued or to be issued thereon, so far as that half is concerned; but that, as between him and the complainant, the judgment and any execution or executions thereon shall be as valid and effectual as if the release had not been executed; nor any agreement to discharge McCatharn made; and Cramer will be required to pay the costs of this suit.