Borcherling v. Katz.

---

## CHARLES BORCHERLING

*v.*

## BERNARD KATZ and PHILIP KATZ.

1. A principal is bound by the acts of his agent within the authority expressly given, and also for such acts as it is necessary for the agent to do to accomplish the object of his appointment.

2. Where a contract is made by an agent, without disclosing his principal, and the other contracting party afterwards discovers the principal, he may waive his right to look to the agent and resort to the principal.

3. And in such a case, parol evidence is admissible to show who the principal was, even when the contract is in writing.

4. But the rule that an unnamed and unknown principal shall stand liable for the contract of his agent, does not apply to a demise under seal. The re-

lation between the owner of land and those who occupy it is of a purely legal character; and the fact that a lessee takes a lease for an unnamed principal, but in his own name, will not render the unnamed principal liable for the rent.

On final hearing on bill and answer and proofs taken in open court.

*Mr. Thomas N. McCarter*, for complainant.

*Mr. Charles . F. Hill* and *Mr. Socrates Tuttle*, for defendants.

Van Fleet, V. C.

This is a novel case. The complainant seeks to hold the defendants for the rent reserved by a lease made by him to other persons than the defendants. The special ground on which he seeks to do this is, that the defendants were the real lessees, that, though the demise was made to other persons, they acted simply as the agents of the defendants, who were the principals in the affair and entitled to the benefit of the demise. The legal principle on which he rests his right to relief, is that which entitles a vendor who, having made a sale to a person whom he believed at the time to be the principal in the transaction, is afterwards

Note.—In *Kiersted* v. *Orange and Alex. R. R. Co., 1 Hun 151, 69 N. Y. 343,* a lease under seal, executed by an agent as lessee, in his individual name, and which did not purport to be executed on behalf of the principal, was held, in an action on the lease and for use and occupation, not binding on the latter, although the fact of the agency was recited therein, and although it appeared by extrinsic evidence that the lessee acted as agent. The principal occupying the premises during the term, no assignment of the lease being shown, was, in the absence of evidence, presumed to have entered as subtenant. See *Durand* v. *Curtis, 56 N. Y. 7; Brewer* v. *Dyer, 7 Cush. 337; Sanders* v. *Partridge, 108 Mass. 556; Haywood* v. *Brunswick Build. Soc., L. R. (8 Q. B. D.) 403.*

In *Van Schaick* v. *Third Ave. R. R. Co., 8 Abb. Pr. 380, 30 Barb. 189, 49 Barb. 409, 38 N. Y. 346,* it was held that a lease taken by. A, in trust for a corporation thereafter to be formed, creates, on the formation of such corporation and upon its receiving an assignment of such lease, with knowledge of the terms upon which it was executed and received from the lessor by A, a liability in equity, on the part of such corporation, to pay the rent to the lessor. See, also, *Wright* v. *Pitt, L. R. (12 Eq.) 408; Lorillard* v. *Lorillard, 4 Abb. Pr. 210; Borrell* v. *Newell, 3 Daly 233; Morgan* v. *Yard (Pa.), 14 Rep. 759; 1 Addis. on Cont. *213; Nicoll* v. *Burke, 78 N. Y. 580.*—Rep.

Borcherling v. Katz.

discovered to have been the agent of a third person, to recover the price of the goods of the principal, though he has in the meantime debited the agent.

The following summary presents all the important facts: On the 22d of October, 1877, the complainant made a lease, under seal, to Rudolph Heller and William Katz, partners, doing business under the name of Keller & Katz, demising certain premises, situate on Mulberry street, in the city of Newark, for a term of two years and five months from the 1st day of November, 1877, at an annual rent of $840, payable monthly in advance. The lease was executed by both parties. It gave the lessor the right to re-enter for the breach of any covenant on the part of the lessees. The lessees covenanted not to underlet, nor to assign the lease, or any part of their term, without the written consent of the lessor. On the 31st day of October, 1877, the defendants, Bernard Katz and Philip Katz, constituted and appointed Heller & Katz their attorneys, empowering them to carry on and conduct the business then owned by the defendants in the city of Newark, and to do and perform all and every act and thing whatsoever requisite and necessary to be done in carrying on the business. Heller & Katz took possession of the demised premises soon after the commencement of the term, and continued to occupy them, jointly, until December, 1878, when Heller left. Afterwards Katz continued to occupy them alone until April 1st, 1879, when he left. At the time the premises were abandoned there was $220 rent in arrear, which the complainant attempted to collect by distress, but the defendants claimed the property seized, and the complainant surrendered it. This claim by the defendants was, in part at least, false. They now admit that most of the chattels seized belonged to Heller & Katz. The complainant subsequently brought an action at law against the lessees for the rent in arrear, but, on discovering the power of attorney, proceeded no further. He did not know of the existence of the power of attorney until May, 1879, some time after he had commenced his action at law. For the purpose of putting the case in the most favorable form for the complainant, I shall assume that the business carried on

on the demised premises was the business of the defendants, and that Heller & Katz were the agents of the defendants when the lease was executed, although the weight of the evidence shows both facts to have been otherwise.

Some of the complainant's legal propositions are so firmly established as to be beyond dispute. There can be no doubt that a principal is bound by the acts of his agent within the authority expressly given to the agent, and also for such acts as are necessary and requisite to be done in order that the agent may accomplish the object of his appointment. It is also true, as a general rule, that where a contract is made by an agent, without disclosing his principal, and the other contracting party afterwards discovers that the person with whom he dealt was not the principal, but that a third person stood behind him as the real party in interest, he may abandon his right to look to the agent personally, and resort to the principal. And this he may do even when the contract is in writing, and is such as is required by the statute of frauds to be in writing, for, in such case, parol evidence, showing that an additional party is liable, in no way contradicts the written instrument. "It does not deny that it is binding on those whom, on its face, it purports to bind, but shows that it also binds another, by reason that the act of the agent, in signing the agreement, in pursuance of his authority, is, in law, the act of his principal." *Higgins* v. *Senior, 8 M. & W. 834, 844.* Parol evidence is admissible in such cases to charge the principal, but not to discharge the agent. *2 Smith's Lead. Cas. 226.* But where an agent makes a lease in his own name, and executes it in his own name, though the rent is reserved to his principal, and all the covenants purport to be made with his principal, the principal cannot maintain an action on it, for the reason that on a deed *inter partes* no person can maintain an action except a party to it. *Berkeley* v. *Hardy, 5 B. & C. 355 ; Sheldon* v. *Dunlap, 1 Harr. 245.*

The complainant puts his right to relief against the defendants, on these legal rules. He justifies his resort to this court in this wise: He insists that by force of the legal rules just stated, his right to hold the defendants for the rent is clear, but

that he cannot maintain an action at law against them because
they are not parties to the lease.    He says he cannot maintain an
action for use and occupation, for the statute declares that such
action can only be maintained where the agreement for the occu-
pation of the land is not by deed (*Rev. p. 570 § 3*); he claims,
therefore, that his case falls within that principle of equity juris-
prudence which declares that where there is a right there ought
to be a remedy, and, if the law gives none, it ought to be ad-
ministered in equity.    This conclusion, I think, may be admitted
to be sound, provided it is found that the defendants are subject
to the legal principle on which the complainant mainly rests his
right to relief.    This, in my judgment, is the test question of the
case.

Neither the researches of counsel, nor my own, have resulted
in the discovery of a precedent for this action.    I think it may
safely be said that no instance exists in which some other person
than the lessee named in a lease, under seal, has been held liable
in equity for the rent reserved by the lease, on the ground that
he was the undisclosed principal in the transaction, and liable, as
such, by force of the rule which renders an unnamed and un-
known vendee liable for the price of goods purchased by him
through his agent.    The only case to which my attention has
been directed, which can be regarded as authority for the com-
plainant's position, is *Clavering* v. *Westley, 3 P. Wms. 402.*
There the plaintiff made a lease of a coal mine to A for twenty-
one years.    A then declared a trust of the lease for five persons.
These five persons entered into possession, worked the mine, and
took its products, but some time after, the lessee becoming in-
solvent, and the mine unprofitable, they abandoned it.    The
lessor then brought his bill against the lessee and *cestuis que trust*
to compel them to pay the rent in arrear, and also the accruing
rent, insisting that though the lease was made to A, yet it being
declared by him to be in trust for the five persons, as tenants in
common, it was the same thing as if it had been made to them
originally.    The master of the rolls (Sir Joseph Jekyll) held
that the *cestuis que trust* were not liable, and dismissed the bill.
His reason was this : That inasmuch as the plaintiff had chosen

Borcherling *v.* Katz.

to let the mine to A alone, and to accept his covenant for the rent, he should be restricted to the security he had voluntarily accepted. Having accepted the covenant of the lessee, his remedies were limited to that. Lord Talbot, on appeal, reversed this decree, and decreed that the lessee was primarily liable, but in case the rent could not be collected of him, then that each of the five *cestuis que trust* should pay one-fifth of the rent in arrear, and also that which should afterwards accrue. The report of this case, on appeal, is extremely meagre and unsatisfactory. The conclusion of the lord chancellor is simply given, without more. No reasons are given, and we have not a even a hint of the legal rule which it was supposed the judgment of the master of the rolls had overlooked or disregarded.

. But this case has since been overruled. It is no longer an authority in the court which decided it; on the contrary, its doctrine has been repudiated. Lord Cranworth, in *Walters* v. *Northern Coal Mining Co., 5 De G. M. & G. 629,* after expressing regret that the grounds of Lord Talbot's decision are not given, says: "If he is to be taken as laying down a general proposition that whenever a legal lessee is trustee for another, the rent becomes an equitable debt from the *cestui que trust,* to be recovered by bill in this court, I must, with all respect, say that is a proposition to which I cannot assent. I rest my judgment on the ground that no such general principle exists." Lord Cranworth's discussion of the question on which the decision here must turn, is so exhaustive and unanswerable that this case may be decided by a single quotation from his opinion. He says: " The rights of a landlord against those who occupy his land are legal rights, well defined and understood. Where a tenant is holding under a demise at a stipulated rent, the landlord has his remedy by distress or action of debt. If the lessee assigns to another, the landlord has against the assignee, so long as he remains in possession, the same rights which he had against the original tenant. If instead of assigning his interest, the lessee creates a tenancy under himself, then the original landlord may either distrain on the under-tenant, or may bring his action of debt or covenant, as the case may be, against the original lessees.

\* \* \* The object of the present bill is to give to the land-
lord an additional remedy in case the legal lessee is a mere trus-
tee for others, who have in fact occupied the lands, to enable the
landlord, in such a case, to treat the *cestuis que trust* as equitable
debtors for the amount of the rent. But I can discover no
principle to warrant such a proposition. The relation between
the owner of the land and those who occupy it is of a purely
legal character. The circumstance that there is a relation of an
equitable character subsisting between the lessee and the actual
occupier cannot give any equitable rights to one who claims by a
title paramount both to the trustee and the *cestui que trust.*
Whatever be the relation between the lessee and the occupier, the
landlord's rights are unaffected. He has his legal remedy by
distress, or he may bring his action against the lessee." The
same doctrine, substantially, was enforced by Lord Justices
Knight Bruce and Turner in *Cox* v. *Bishop, 8 De G. M. & G.
815.* An attempt was made there to hold the equitable assignee
of a lease for the rent which accrued during the time he was in
the actual possession and enjoyment of the demised premises.
Lord Justice Knight Bruce said : "They [possession and enjoy-
ment] do not, in my judgment, create a contract between the
lessor and the equitable assignee which can give the former a title
to the relief prayed against the latter. The possession by itself
would not, nor would the equitable assignment by itself, have
given the lessor the equitable right which he is here asserting
against the lessee; neither, I think, can the union of the two."

It is quite impossible to distinguish these cases from the one
under consideration. They are, in all material and essential
points, identical, and must all be governed by the same general
rules of justice. The fact that the complainant has chosen to
describe the relation existing between the defendants and the les-
sees in this case, as principal and agent, and that in the cases just
referred to the relation which existed between the lessees and the
persons sought to be charged with the rent was spoken of as trus-
tee and *cestuis que trust,* is without the least significance in legal
estimation. The difference is in terms or names, and not in the
legal character of the relation. The relation, in principle and

substance, is the same, whether it is described by one set of terms or the other, and its rights and obligations are the same, whether called by one name or the other. In every instance in which an agent takes title in his own name to property purchased for his principal, he makes himself, in equity, the trustee of his principal. And if, in the transaction under consideration, Heller & Katz were the agents of the defendants, then in taking the lease in their own names they made themselves the trustees of the defendants, and the more accurate description of the relation of the parties, in that case, would be trustee and *cestui que trust*, rather than principal and agent.

The precedents are against the complainant. I think reason is also against him. No reason of justice or policy can be suggested why landlords should have the additional remedy sought in this case. A creditor of that kind is already highly favored by the law. He may distrain either against the tenant or the under-tenant; if the person in possession fails or refuses to pay the rent in arrear, the landlord may dispossess him, and thus recover the possession of the premises, and in addition, he may use the only means within the reach of ordinary creditors—bring his action at law. If with these ample remedies at his command he fails to secure the payment of his rent, it may be safely concluded it is not for the want of adequate remedies.

The complainant's bill must be dismissed, with costs.