HANNAH E. KELLEY

*v.*

AUGUSTINE B. REPETTO et al.

[Filed June 7th, 1901.]

1. Where a party having an equitable interest in lands assents to and aids in the disposition of the legal title thereto, she is estopped, after the purchasers from the holders of the legal title have by her inducement changed their position, from asserting her equitable claims upon the legal title.

2. An attorney is bound to deal with his client with frankness, and to render her an itemized account of his receipts and disbursements of her moneys paid to him.

On bill, answers and proofs.

*Mr. Enoch A. Higbee,* for the complainant.

*Mr. Clarence L. Cole,* for the defendants.

GREY, V. C. (orally).

The testimony has been taken over two days and the cause has been fully argued by counsel. I think I can dispose of it now.

The complainant files a bill as the equitable owner of one undivided third part of a tract of land known as block, or section, 92, in South Atlantic City. The legal title to this block, at the time when the complainant's interest in it attached, was in a man by the name of Samuel Kirby. Mr. Kirby had made an agreement to sell this property to the defendants William Bowker and Augustine Repetto. They, holding the equitable rights under Kirby's contract, agreed that the complainant should be admitted to an equal partnership with them, contributing an equal share of the purchase-money, which she subsequently did. There were some intermediate transactions, suggesting an interest in other persons, which were only partially carried out. They finally resulted in the holding of equitable rights in the property by the defendants William Bowker, to the extent of a one-third interest, Augustine B. Reppetto, of another one-third, and the complainant, Hannah E. Kelley, of the remaining third. In actual fact, the property was disposed of by these equitable owners before Mr. Kirby executed any deed to them. Kirby subsequently conveyed the block (No. 92) to the New York and Atlantic City Navigation and Pier Company, which corporation received the conveyance as a mere trustee for the equitable owners, according to their several shares.

The bill alleges that Mrs. Kelley was deceived, in that she was led to believe that the equitable title owners were themselves to receive a conveyance of the legal title, the effect of which would

Kelley *v.* Repetto.

have been to give to her an undivided one-third part on the face of the paper title. No one has ever disputed her ownership of a one-third interest in fact.

The weight of the testimony goes to show that Mrs. Kelley was neither misled nor cheated in the making of the deed by Kirby to the New York and Atlantic City Navigation and Pier Company. When Mrs. Kelley says that the deed was made without her knowledge and consent, she makes a mistake. There are several witnesses who contradict her, and show that she was not only previously informed of the intention to put the title in that company, but she was consulted on the point, and approved of that disposition of the property as an easy way to hold it for ready sale and conveyance, in accordance with the purpose of the parties interested, avoiding the delays and vexations attendant upon the making of deeds by several owners. There is nothing shown in the proofs which indicates that any associate of Mrs. Kelley was, at any time, actuated by a disposition to do her any wrong. The weight of the testimony, part of which is that of disinterested parties, conclusively shows that the title was put in the name of this company by her assent. Mrs. Kelley does not repudiate the sale made by the pier company. She does not dissent either as to the price at which or the persons to whom the sale of the land has been made by that company. What she insists upon is that she never assented to the placing of the title in the name of the pier company, and she wants the legal title to the undivided one-third part of the property decreed to be in her name, so that she may be a necessary grantor to McGraw and McConaghy, who have purchased from the pier company.

This is an afterthought on the part of Mrs. Kelley, and appears to have been occasioned by her differences with Mr. Repetto. Her assent to the putting of the title in the pier company, and her activity in aid of the sale of the property afterwards, estop her, at this late day, to set up an equity which will enable her to defeat the title agreed to be conveyed to McGraw and McConaghy by the pier company before she filed her bill. No wrong has been done to Mrs. Kelley by the putting of the title in the name of the pier company. It has been shown that she assented to that, and subsequently aided in making sale of the property to Mc-

Kelley *v.* Repetto.

Graw and McConaghy. Now that the parties have all changed their positions, she is estopped to set up a right, unsubstantial in its character, but which might be used to the injury of persons induced by her conduct to purchase the lands in question.

The result of that holding is that, as against McGraw and McConaghy, who are the present holders of the legal title under the carrying out of the contract for sale made with them, Mrs. Kelley has no equity. Their attitude is entirely justified; they dealt with the legal title at the time in a way in which they were entitled to deal with it, and have paid their money in accordance with their agreement made with the aid and assent of all the equitable owners, Mrs. Kelley included. The bill of complaint must be dismissed as to McGraw and McConaghy, with costs.

The bill shows, and the answers admit, that Mr. Repetto alone has the money of Mrs. Kelley. Mr. Bowker is a party only as to that phase of the bill which alleges that he joined in a fraud, whereby the title was put in the pier company to Mrs. Kelley's disadvantage. The complainant's proofs fail in that respect, and therefore the bill must be dismissed as to Mr. Bowker, with costs.

The New York Navigation and Pier Company is in the same attitude as Mr. Bowker, and as to that defendant the bill must be dismissed, with costs.

As to Mr. Repetto, his answer shows frankly that this woman's money has been received by him as her attorney. He says he has always been willing to account to her for these moneys. He claims that he has rendered her a statement of his receipts and expenditures in her behalf in this transaction. The evidence shows that a memorandum typewritten statement was sent by Mr. Repetto to Mrs. Kelley, which contained, intermingled with other dealings between them, an exhibition of part of Mr. Repetto's transaction for her in this matter. Mrs. Kelley's present counsel in this cause called upon Mr. Repetto with this statement. The latter then admitted that, since the statement had been sent, there had been substantial payments made to him, not included in the statement. He also flatly refused to permit Mrs. Kelley, or anyone chosen by her, to be present at the final settlement then about to be made with the purchasers of the property, declaring that "she had entrusted this matter to him, and he didn't

propose to let her in now—he did not have to." Shortly after this conversation, and while the parties were in this attitude, the bill in this cause for an accounting was filed by Mrs. Kelley.

Mr. Repetto does not deny that his relation to Mrs. Kelley in this transaction was that of attorney to client. He does not deny that this relation obliges him to account to her for her moneys which he has received. What he claims is that he had, before the bill was filed, actually accounted to her for her moneys in his hands. The evidence satisfies me that he had not. He knew, before the bill was filed, that Mrs. Kelley was dissatisfied with his conduct in the transaction. The typewritten memorandum cannot be taken to be an accounting for the matter now in dispute, as it does not undertake to show the amount of money in hand when this suit was commenced, and is quite insufficient, in itself, so to define the amount due Mrs. Kelley that she could, on it, have begun a suit at law at the time when this suit was brought. There is no pretence of any other accounting. Mr. Repetto does not deny that Mr. Higbee, who called up him just before this suit was begun, in behalf of Mrs. Kelley, was then her employed attorney, authorized to act for her in this transaction. Mr. Repetto claimed the right, because of his previous employment as Mrs. Kelley's attorney, to prevent his client from participating in a settlement in which he admitted she had an interest. His position was, in fact, hostile to Mrs. Kelley, and was an unjustifiable assumption of power. She could not sue him at law for the moneys he had received for her, because she could not know, until he had rendered an account to her, what amount was actually due to her. The same condition of affairs is yet existent. A final disposition of the property has been made to McGraw and McConaghy. Mr. Repetto admitted that he had received the purchase-money. He was on the stand as a witness for himself, and gave testimony as follows as to this purchase-money :

"*Q.* You have never paid Mrs. Kelley her part of it?
"*A.* No, I have offered to do so.
"*Q.* How much is there coming, according to your calculation?
"*A.* I don't know ; I could not say now."
"*Q.* When did you offer to do so?

Kelley *v.* Repetto.

"*A.* I said to Mrs. Kelley, 'any time that you are willing to sign a quit-claim deed, so that McGraw and McConaghy will get a clear title, I will settle immediately; fix your time.'"

It is evident Mr. Repetto had not, at the time of the filing of the bill of complaint in this cause, nor has he since, made up an account of the moneys due from him to Mrs. Kelley in this transaction, and he certainly had not rendered to her any such account as would enable her to sue him for those moneys in a court of law. His relation to her was fiduciary, requiring from him entire frankness and candor. She was entitled to have from him such a statement of account as definitely showed the sum due to her. She did not forfeit this right because her conduct was mistaken and vexatious. She had no legal title to the property sold, and could not demand the purchase-money from the purchasers, and had no *status* to sue them at law. She had assented to the sale, and had no equitable claim against them. She can only get her share from Mr. Repetto, who admits he has received it for her. He has paid out part of it, rightfully, in discharge of costs, expenses and, by Mrs. Kelley's direction, of her debt to Bowker, but how much remains Mrs. Kelley does not know. If she sues Mr. Repetto at law, she does not know what is due, and a ready reply can be made that Mr. Repetto holds the money in trust, with an unsettled amount of costs, expenses and payments chargeable against it, and no account stated. Under these circumstances, Mrs. Kelley has a right to have a statement of the account from Mr. Repetto, to have the items of receipt and disbursement stated, showing how much of her money has been taken to pay her debt to Mr. Bowker and what were the expenses incidental to this transaction, and definitely fixing the balance due to her.

I will advise a reference to a master to state such an account.