On the 18th day of April, 1925, the defendant Island Development Company entered into an agreement with one Ulysses G. Hillman, wherein it agreed to convey to said Hillman for the consideration of $150,000 on or before the 18th day of April, 1926: *Page 263 
"All that lot, tract or parcel of land and premises hereinafter particularly described, situate, lying and being in the city of Brigantine, in the county of Atlantic and State of New Jersey, bound and described as follows: Bound upon the north by Ocean avenue, on the south by the high water line of Atlantic ocean, on the east by Thirty-second street south, on the west by Thirty-third street south, being block 219, as shown on map hereunto attached, together with all the right, title and interest of the party of the first part, in and to lands lying under the water in front of said described premises, between the high water line of the Atlantic ocean and the interior line of the City Park."
The said Hillman agreed to pay said consideration of $150,000 as follows:
"Fifteen thousand dollars, receipt of which is hereby acknowledged.
Fifteen thousand dollars on July 18th, 1925.
Fifteen thousand dollars on October 18th, 1925.
Fifteen thousand dollars on January 18th, 1926.
Fifteen thousand dollars on April 18th, 1926, at which time settlement shall be made and title passed. At time of settlement, party of second part agrees to execute his bond, or the bond of his successors or assigns secured by first mortgage on said described premises for $75,000, said mortgage to be payable at any time within three years from the date thereof, and to bear interest at the rate of six per cent. payable semi-annually.
It is further agreed by and between the parties hereto that should the party of the second part, his heirs, successors or assigns, build or cause to be built upon said described premises, and open to the public for entertainment on or before the 15th day of June, 1926, a hotel containing at least 150 bedrooms with at least 100 baths, costing not less than [$400,000] four hundred thousand dollars, to be of fireproof, or semi-fireproof construction, and also to assume any expense incurred by this company for hotel plans ordered from McLanaham and Benkert, architects of Philadelphia; then, in that case, the $75,000 mortgage will be canceled of record and rebated unto the party of the second part, his heirs, successors or assigns, as a discount on the purchase price herein named."
Hillman assigned said agreement by endorsement thereof as follows:
"Dated ______________ 1925.
For value received, I hereby assign, transfer, set over and release all my right, title and interest in the within agreement to Atlantic-Brigantine Hotel and Pier Co.
 ULYSSES G. HILLMAN. Witness:
C.B. RICHMAN." *Page 264 
By deed dated the 19th day of April, 1926 (but not recorded until October 14th, 1926), the said Island Development Company conveyed to the said assignee, the Atlantic-Brigantine Hotel and Pier Company, by metes and bounds, said premises bounded on the north by Ocean avenue, on the south by the high water line of Atlantic ocean, on the east by Thirty-second street south, on the west by Thirty-third street south; together with all the right, title and interest of the party of the first part, c.
It is conceded that Hillman, the assignor of said agreement, and C.B. Richman, the witness thereto, were members of a syndicate, and that Richman was acting on behalf of said syndicate, and that the members thereof were the incorporators of the complainant company.
On September 28th, 1927, the complainant filed its bill, praying:
"2. That it may be decreed that said Island Development Company return to complainant the amount paid upon the aforesaid agreement, to wit, $75,000, with interest from the date of the receipt thereof by Island Development Company, and cause to be canceled of record and surrender to complainant, the bond and mortgage aforesaid, in the amount of $75,000, upon the reconveyance to Island Development Company of the tract aforesaid.
"3. That Chelsea National Bank shall be decreed to cancel of record and surrender to complainant all right, title and interest, if any, which said Chelsea National Bank may have or claim to have in said bond and mortgage, without any charge to complainant."
The substance of the charges made by the complainant is contained in clause 15 of the bill as follows:
"Complainant alleges that defendant Island Development Company, fraudulently induced the complainant to pay the said sum of $150,000 for said land, privileges and rights hereinbefore recited, upon the representation that said Island Development Company would forthwith obtain the said riparian grants and would dedicate to the public the aforesaid City Park, and that defendant Island Development Company has injured and defrauded this complainant in the amount of *Page 265 
at least $75,000, by failing, neglecting or refusing to obtain the said riparian rights hereinbefore described and by failing, neglecting or refusing to convey to Brigantine city for park purposes that part of said riparian lands lying within the limits of said proposed public park and by failing, neglecting or refusing to carry out its other and sundry covenants aforesaid."
The gravamen of the proof as presented by the complainant and as set out in its brief is: That block No. 219, the land in question, "was not by said map cut up into lots, and as displayed upon said map, [there was] an empty space on the ocean side of the upland, described as Pier Site;" that Butler, a licensed real estate broker, who at one time was a member of the purchasing syndicate, was given by the Island Development Company or some officer thereof a so-called price list dated April 1st, 1925, which among other things stated:
"Block 219
With full pier rights, unrestricted, sale price $100,000, or to a purchaser who will build pier 500 feet long costing $100,000, during coming summer, the price will be $75,000, with $15,000 cash payment. This offer withdrawn after June 1st, 1925, or on notice at any time."
That Harris, the president, represented to Butler that the Island Development Company had "full pier rights in block 219, and that the balance of the beach front in front of Brigantine with the exception of 201 had been dedicated to the city of Brigantine by deed of dedication for public park purposes, and that we, in buying this block, had the only block where a pier could be constructed, with the exception of block 201."
Mr. Richman, when asked about conversation with or remarks made by Harris, testified: "That this block had full pier rights."
Continuing quotations from the brief of the complainant:
"The position that the Brigantine company takes is that both by the evidence of the verbal declarations made, the statement in the price list, and the language used in both the agreement and the deed to the Brigantine company, it was expressly stated that the development company had full pier rights at the time of the agreement *Page 266 
for purchase * * *. Also an open effective dedication of the land under water in front of the entire section, save in front of blocks 219 and 201, had been made for a park, and that a boardwalk, as shown on the map, was to be erected. All of this is untrue, was most material, and the Brigantine company is therefore justified in contending that the tender of its deed [Exhibit D-3] made and refused, was justified."
I find nothing in any written exhibit which would be evidential of any agreement or statement by the Island Development Company that it had procured the riparian rights of the land under water oceanward of the land in question.
The testimony of Butler, that Harris made such a statement, is specifically denied by Harris, and Richman, one of the syndicate, knew that the Island Development Company did not have the riparian rights, and actually wrote, as president of the complainant, the following letter:
"SEPTEMBER 24, 1925.
Mr. H.I. Eaton, C.E. Island Development Company, 1201 Atlantic Avenue, Atlantic City, N.J. My Mr. Eaton:
Kindly obtain at our expense the riparian rights on block 219, Brigantine Beach. This grant may be taken out in the name of the Island Development Company and included in our deed when we make settlement. We will pay all expenses and cost involved for obtaining same.
 Very truly yours, ATLANTIC-BRIGANTINE HOTEL AND PIER CO. WM. RICHMAN, President."
It is manifest that the president of the complainant knew that the Island Development Company did not have the riparian rights and that those rights were not to be included in the deed from that company.
After that time payment of the $15,000, last payment to be made, and the fee for recording deed of $2.40 was made as evidenced by the receipt of Island Development Company, dated June 15th, 1926. Exhibit D-9.
The insistence of the complainant is that the use of the words in the price list, "with full pier rights, unrestricted," *Page 267 
was a declaration by the company to the purchaser, that the company had a grant from the state for the riparian rights in the lands lying under water oceanward of block 219.
I cannot find as a fact that Harris represented to Butler that the Island Development Company had "full pier rights." Nor do I find that if Harris stated to Richman "that this block had full pier rights," increased the effect of the statement upon the price list.
The contract is specific and precise. The company was to convey block 219 "together with all the right, title and interest of the party of the first part in and to lands lying under water between the high water line of Atlantic ocean and the interior line of the City Park, said interior line being located at a distance of about one thousand five hundred feet beyond the interior line of the proposed boardwalk, as shown on the blueprint hereunto attached, between Thirty-second and Thirty-third streets south, it being understood that the premises oceanward of the above named block and between Thirty-second and Thirty-third streets south, are not incorporated within the boundaries of the City Park, for a distance of about one thousand five hundred feet, having been left vacant in order to provide site for the construction of an ocean pier without being affected by said ocean front park ordinance. It is fully understood and agreed, however, that a right of way for the boardwalk of the width of proposed boardwalk, will be dedicated across the above described premises at the location shown on the attached blueprint. Said described premises are to be conveyed free and clear of any restrictions. Thirty-second and Thirty-third streets from Ocean avenue to the bulkhead constructed across said described premises are to be paved with gravel, and concrete sidewalks and curbs are to be constructed before day of settlement. Ocean avenue will be paved with gravel, with concrete sidewalks and curbs before day of settlement. The land lying between the bulkhead and Ocean avenue will be filled to grade before day of settlement." The contract could not be more specific.
There was, evidently, no misrepresentation or claim on the part of the company that it owned such riparian rights. In fact, as above stated, the complainant company knew that it *Page 268 
was not obtaining a conveyance of riparian rights already obtained from the state, but that it was obtaining all the rights of the company to obtain such a grant.
"The general rule appears to be that in the absence of fraud, when a sale of real estate has been consummated by the execution and delivery of a deed of conveyance, the purchaser's measure of protection in matters of title to the land is to be found in the covenants which he exacts from his vendor, and such covenants are not to be deemed as broken until eviction. In buying without covenants of title, the doctrine of caveat emptor must apply, and neither failure of, nor defects in title, in the absence of fraud, affords ground for relief * * *."
But in addition to the claim of failure of title to the riparian rights, the complainant alleges fraud on the part of defendant, and seeks a decree "* * * rescinding the transactions between the parties by having the deed which was made to him by complainant and the mortgage which was made by him to complainant canceled, and also prays for a restoration to him of all moneys paid by him to complainant and also seeks recovery of certain moneys which have been expended by him for improvements on the property in question.
A broad and well-defined distinction exists between the relief that can be awarded to a vendee of real estate who has been injured by reason of misrepresentations of his vendor touching material matters relating to the physical condition of the property and the relief that can be awarded by reason of statements made by a vendor, declaring his title to be good. For the former class of misrepresentations in an action at law for deceit, a fraudulent intent must be shown; in a court of equity, relief may be granted although the false representations were innocently made. Cowley v. Smyth, 46 N.J. Law 380; Eibel v.Von Fell, 63 N.J. Law 3; affirmed, 64 N.J. Law 364; Eibel v.Von Fell, 55 N.J. Eq. 670; DuBois v. Nugent, 69 N.J. Eq. 145
* * *.
But when a vendee accepts a deed of conveyance containing a warranty of title which is expressly limited to claim under the vendor, and thus specifically defines the extent of the vendor's liability, the negative element of the covenant, which *Page 269 
in effect declares that the vendor will not warrant against a title paramount, so forcefully appears as the final contractual measure of the vendor's obligations and as in effect merging declarations of the vendor touching his title into the restricted covenant (as suggested in Bihon v. Morris, and Andrus v.St. Louis Smelting Co., supra), that nothing short of fraudulent intent on the part of the vendor in representing his title to be good, or concealment where the duty of disclosure exists can appropriately be made the foundation of relief. This appears to be the view generally, though not uniformly, adopted * * *." Hawthorne v. Odenson, 94 N.J. Eq. 588.
The use of the words "right, title and interest" clearly gave notice to the grantee, that the grantor did not, or might not, have had a fee in the lands under water. They did not have the grant from the riparian commissioners, but have the right to obtain such a grant.
To support a grant from the riparian commissioners, the grantee must be the owner of the ripa when it is made. Kirk v.Dempsey, 85 N.J. Law 304.
The complainants knew this, and in writing requested the company to obtain such grant (while it still retained title to the ripa) at the cost and expense of the complainant.
This situation suggests the advisability of and necessity of including in the contract for sale, of words, "title, interest,c."
In the event of a dedication by the company to the city of lands for a park, and the creation of the park by the city, the city may obtain a grant from the riparian commissioners. 4 CompStat. p. 4393 § 31.
I find that the complainants have failed to support the allegations of the bill, and will advise its dismissal. *Page 270