This is a foreclosure suit. Among the defendants are the owners of certain lots which were once part of the mortgaged premises and which were released from the mortgage. They are joined in order to cut them off from the benefit of a covenant restricting the use of other parts of the mortgaged property. Are they entitled to the benefit of the covenant as against the complainant mortgagee? The case turns on estoppel.
In 1937, complainant held two mortgages aggregating $150,000 on a large tract of vacant land in Montclair, legal title to which was vested in the Montclair Holding Company. The Holding Company held title, however, subject to a written agreement to sell and convey all, or any part, of the *Page 571 
premises, when directed to do so by the Trust Company. "It is further covenanted and agreed between the parties hereto that said premises or any part thereof may be sold at any time upon the direction of the Trust Company given in writing to the Holding Company for such price and upon such terms as the Trust Company may direct * * * and that the Holding Company will execute and deliver deeds for such part of said premises as may be sold upon the direction of the Trust Company and not otherwise." The parties had further agreed that the proceeds of the property should be applied first to the debt due the complainant; second, a certain amount, about $11,000, to the Holding Company; and to pay any balance to a third party, the Russell Company. If the amounts due to the complainant and the Holding Company should be satisfied before all the property was disposed of, the part remaining unpaid was to be conveyed to the Russell Company.
The Holding Company had no asset except this land. It was entirely inactive — "defunct," as one witness put it. Its only transactions were with the complainant and these seem to have consisted only of advances by the complainant for taxes and assessments on the land and entering a charge for the same in the books of account of the Holding Company. These books were kept at complainant's banking house and the entries were made by one of its employees. It was entirely unlikely that the land would yield enough to pay the amount due complainant. The other two parties had practically no interest therein.
Such was the situation when complainant succeeded in interesting Ernest C. Hinck, Jr., in the purchase and development of part of the tract. All negotiations on the part of the vendor were conducted by complainant through its president, Mr. Granger, assisted by its secretary. It was complainant's hope that if some high-class residences were built on the track by the Hincks, other sales would follow and complainant might recoup a large part of its investment. To that end, Mr. Granger insisted that the deed to Hincks Brothers, Inc. (a corporation formed to take title) should contain apt restrictive covenants. Mr. Hinck agreed, provided *Page 572 
like restrictions were imposed on a specified part of the tract which was not included in the sale. To this complainant assented. The necessary documents were then prepared, namely, a release from complainant to the Holding Company of that part of the tract about to be sold, a deed from the Holding Company to Hinck Brothers, Inc., a purchase-money mortgage to the Holding Company, and an assignment thereof to complainant. No officer or representative of the Holding Company appeared in the matter until the day of closing title when its president and secretary attended to execute the deed and the assignment of the mortgage, and to endorse to complainant the check for the cash consideration, $14,200. The entire consideration was received by the complainant for its own benefit.
The deed contained a covenant by the grantor "that it will restrict the premises now owned by it fronting on Yantecaw Brook Road to a depth of 135 feet to single family private houses together with suitable garages, to cost not less than $10,000 when erected, and to set back 40 feet from the street line." Complainant contends that it is not bound by this covenant, inasmuch as the grantee took with knowledge of complainant's mortgages and as the release to the Holding Company makes no mention of the restriction.
It clearly appears that the principal parties to the transaction in 1937 were complainant and Hinck Brothers. The Holding Company was merely the agent of complainant carrying out the bargain which complainant had made. Complainant induced Hinck Brothers to accept the conveyance and complainant received the benefit. From these facts, defendants argue an estoppel. On the other hand, complainant first calls attention to the pleadings: Defendants do not counter-claim for reformation; they do not charge fraud. The bargain was carried into operation and merged in the instruments of release and conveyance. Hinck Brothers might have refused to accept the deed because of the unreleased mortgages on the land which was subject to the operation of the covenant. But the deed was accepted and Hinck Brothers took exactly what the deed passed — no more, no less. *Page 573 
It is, of course, generally true that when a deed is given and received in full execution of a contract for the sale of land, the contract, as well as all prior negotiations and agreements, merge in the deed, and the legal rights of the parties are thereafter determined by the deed and not by the contract which led up to it. Atlantic-Brigantine Hotel and Pier Co. v. IslandDevelopment Co., 104 N.J. Eq. 262; 105 N.J. Eq. 591; Brownback
v. Spangler, 101 N.J. Eq. 388. But this does not help us materially in the decision of the case, since the deed to Hinck Brothers on which defendants rely, contains the covenant which is the nub of the controversy. The question remains whether complainant is concluded by the covenant. Although the Holding Company was its agent, the complainant, as principal, is not by the rules of agency, a party to the deed. A principal is not a covenantor or grantor in a conveyance unless he appears upon the instrument as such. As far as the instrument operates as the covenant of the agent, it cannot be operative as the contract of the principal. Restatement — Agency, §§ 151 and 191.Borcherling v. Katz, 37 N.J. Eq. 150; Beck v. Eagle Breweryof Newark, 30 Atl. Rep. 1100. Yet complainant may be bound by the covenant, by force of an estoppel.
Complainant argues that it is essential to an equitable estoppel that the party asserting it was ignorant of the true facts when he changed his position. Central Railroad Co. v.MacCartney, 68 N.J. Law 165; Briscoe v. O'Connor, 119 N.J. Eq. 378.
In the present case, Hinck Brothers were aware that complainant's mortgages encumbered the land which was the subject of the restrictive covenant. All subsequent grantees have had notice of the mortgages from the record thereof. But there is a species of equitable estoppel, sometimes called quasi-estoppel, which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him. 31 C.J.S. 341. No concealment or misrepresentation of existing facts on the one side, no ignorance on the other, are necessary ingredients.
A court of equity will not permit a party to assert his *Page 574 
right to the prejudice of one whom he has induced to go to great expense on the faith that the right would not be exercised.Scott v. Gamble, 9 N.J. Eq. 218; Morris and Essex RailroadCo. v. Pruden, 20 N.J. Eq. 530; Erie Railway Co. v. Delaware,Lackawanna and Western Railroad, c., Cos., 21 N.J. Eq. 283;Bush v. Cushman, 27 N.J. Eq. 131; Cregar v. Cramer, 31 N.J. Eq. 375; Kelley v. Repetto, 62 N.J. Eq. 246; Basen v. ClintonTrust Co., 115 N.J. Law 546. If the conduct of complainant was such that Hinck Brothers could fairly infer that complainant would not assert its mortgages to defeat the covenant, then after Hinck Brothers have acted on this presumption and complainant has reaped the benefit, the enforcement of complainant's title will not be tolerated. Clearly, complainant's conduct permitted no other inference. Well knowing that Hinck Brothers regarded the restrictive covenant as an essential part of the transaction, complainant made the sale and took the purchase price. Thereby it abandoned the right to use its mortgages to overthrow the covenant.