**CATHERINE HYDE AEHEGMA**, Plaintiff–Appellee, v. **AELBERT AEHEGMA**, Defendant–Appellant

NO. 14075

(CIV. NO. 87–313)

SEPTEMBER 17, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

## OPINION OF THE COURT BY BURNS, C.J.

Defendant Aelbert Aehegma (Aelbert) appeals the lower court's November 29, 1988 Findings of Fact and Conclusions of Law, February 15, 1989 Partial Judgment, and September 15, 1989 Final Judgment. He contends that the lower court erred in failing to award him (1) "an equitable, fair and just interest in property acquired and/or improved during the course of the parties' long term cohabiting, family type relationship, including an interest in the [Kamaoa Road property]"; and (2) "spousal type rehabilitative support[.]" We affirm.

## FACTS

Based on the lower court's findings, which are not clearly erroneous, the relevant facts are as follows.

Aelbert and plaintiff Catherine Hyde Aehegma (Hyde) commenced living together on April 21, 1978 in a home owned by Hyde in Connecticut. At that time, Hyde's net worth was $619,815.54. Aelbert owned only a car and some art supplies.

Aelbert proposed marriage, but Hyde declined. However, in a fictitious wedding ceremony on May 1, 1978, Hyde played the part of the bride and Aelbert played the part of the groom. Hyde's three children from a prior marriage witnessed the ceremony without being informed that it was fictitious. The parties did not have a marriage license and the ceremony was not conducted by a person with authority to perform a legal marriage. Neither of the parties intended the fictitious wedding ceremony to have any legal significance.

In January 1979 both parties legally changed their surnames to Aehegma. Neither intended their surname change to have any other legal significance.

The parties' first child was born on February 7, 1979. On September 1, 1979 they came to Hawaii, remained for a month–and–a–half, and then moved to New Zealand where they lived in a residence owned by Hyde. In August 1980 they returned to Hawaii. Their second child was born on September 25, 1981. Their third child was born on March 15, 1984.

Although they occasionally held themselves out to government agencies as being husband and wife and did not affirmatively correct the incorrect assumption by third parties that they were legally married, both Aelbert and Hyde knew, at all times during their relationship, that they were not legally married.[1]

In Connecticut and New Zealand, Aelbert was employed as a teacher. In Hawaii, Aelbert had occasional employment teaching art, consulting, and conducting workshops. Aelbert kept his relatively minimal earnings separate. His art business produced more expenses than income.

---

[1] In Sweden, a cohabiting heterosexual couple living together in a marriage–like relationship is a "sambor." Each cohabitant is a "sambo." Fawcett, *Taking the Middle Path: Recent Swedish Legislation Grants Minimal Property Rights to Unmarried Cohabitants*, 24 Fam. L.Q. 179 (1990).

During her relationship with Aelbert, Hyde was financially independent. She paid almost all of the expenses incurred by or on behalf of herself, her six children, and Aelbert. She paid Aelbert's net business losses. With respect to their separate property, Aelbert and Hyde never made any promises to each other nor entered into any agreements with each other.

In March of 1981 Hyde purchased the Kamaoa Road property in Waiohia, Hawaii, for $120,000.00 in cash. She acquired title in her sole name. The Kamaoa Road property consists of 8.1 acres. Six acres are planted with about 170 macadamia nut trees (Macadamia Nut Farm). Hyde hired people to build a two–story house, a studio–garage complex, and sheep pens on the property. More than $244,098.00 of her money, deposited into a Hyde–Aelbert joint checking account, paid for the construction costs. Hyde used a joint checking account for ease of payment because Aelbert often went to purchase materials and services. Her deposits into the joint checking account were not gifts to Aelbert.

Aelbert was involved in preparing the site and constructing the improvements on the Kamaoa Road property. Upon completion of the improvements, he operated his art business there. Occasionally, when obtaining equipment, materials, permits and licenses, Aelbert inserted his name as a co–owner of the property. Hyde did not object, but did not intend by her silence to gift Aelbert with an interest in the property.

The proceeds from the operation of the Macadamia Nut Farm were deposited into a joint account. Although they both knew they were not married, Aelbert and Hyde filed joint tax returns for some of the years of their relationship.

In 1983 Aelbert again proposed marriage, and Hyde again declined.

For two months in the summer of 1984, Aelbert and Hyde were in Europe (France, England, Switzerland, and Spain) in connection with Aelbert's art show.

Aelbert and Hyde jointly acquired at least two cars, some furniture, a computer, and computer software. They did not have any other joint acquisitions or investments.

Because of tensions in their relationship, the parties were separated on a number of occasions in Connecticut, New Zealand, and Hawaii. For three of the six years they lived at the Kamaoa Road residence, they lived in separate parts of the residence. In 1985 Aelbert became intimately involved with another woman.

Hyde finally terminated her relationship with Aelbert on March 1, 1987. At that time, Hyde's net worth was $900,168.93. On May 28, 1987 Hyde commenced this case with a complaint for ejectment against Aelbert. Aelbert counterclaimed for divorce, division of quasi–marital property, spousal support, constructive trust, and accounting. The ejectment action was resolved by the lower court's July 8, 1988 Amended Possession Order which ordered Aelbert to immediately vacate the Kamaoa Road property.

The lower court's November 29, 1988 conclusions of law state, in relevant part, as follows:

2. Since the parties were never legally married, the only basis on which Aelbert could recover would be on one or more of the theories of putative marriage, express contract, implied contract, or quantum meruit. [Citation omitted.]

* * *

7. Aelbert is entitled to compensation for his substantial labor and planning contribution to the Kamaoa Road property in the sum of $35,000.00. Hyde shall forthwith pay Aelbert, provided[,] however, that amounts due Aelbert from Hyde shall be reduced by amounts Hyde has paid Aelbert since the Court issued its written Decision herein on May 6, 1988, and by sums Aelbert owes Hyde for the profits for the Macadamia Nut Farm, and further provided that Hyde shall not be obligated to

pay Aelbert until Aelbert provides Hyde with a satisfactory accounting of the profits from the Macadamia Nut Farm.

8. The parties shall equitably divide their personal effects. Hyde shall be awarded all of the equipment and implements used in connection with the Macadamia Nut Farm. Each party shall be awarded such property as they owned before the parties began to live together. Each party shall be awarded such property as they have inherited. Aelbert shall be awarded the personal property that comprise his art, poetry, and those other assets related to his art business. Hyde shall be awarded such real property as she holds in her sole name, including the Kamaoa Road property and property in their joint names where she solely paid for the property.

On September 15, 1989 the family court entered a Final Judgment. It notes, in part, that "on August 23, 1989 the parties through counsel stipulated that [Aelbert] owes [Hyde] $8,500.00 on account of profits from the macadamia nut farm operation."

## DISCUSSION

In this appeal, Aelbert advances various theories to support his point that the lower court reversibly erred when it denied his request for an award of rehabilitative support from Hyde and a share of Hyde's property. *See* Perry, *Dissolution Planning in Family Law: A Critique of Current Analyses and a Look Toward the Future*, 24 Fam. L.Q. 77 (1990). We will separately discuss each theory advanced by Aelbert.

## 1.
## Hawaii Revised Statutes § 580–47 (Supp. 1989)

Aelbert contends that because (a) he and Hyde cohabited for more than eight years (b) cohabitation is not illegal, (c) many couples cohabit, and (d) most people who came in contact with them thought they were legally married, the lower court erred when it failed to award him the support, maintenance, and property the family court would have awarded him pursuant to Hawaii Revised Statutes (HRS) § 580–47 (Supp. 1989)[2] if this was a divorce case. We disagree.

Marriage has positive and negative legal consequences for each party. A person who is not legally married does not qualify for the positive legal consequences of marriage. In *Kienitz v. Sager*, 38 Haw. 647 (1950), the Hawaii Supreme Court rejected the theory of "a matrimonial action of an equitable nature." *Kienitz v. Sager*, 40 Haw. 1, 14 (1953). Hyde, who said, "I do not,"

---

[2] Hawaii Revised Statutes § 580–47 (Supp. 1989) reads in part as follows:

**Support orders; division of property.** (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of such matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make such further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

cannot be made to suffer the negative legal consequences that HRS § 580–47 imposes on a person who said, "I do."

## 2.
## Express Contract

"It is an elementary rule of contract law that there must be a meeting of the minds on all essential elements or terms in order to create a binding contract." *Malani v. Clapp*, 56 Haw. 507, 510, 542 P.2d 1265, 1267 (1975). Cohabitation, no matter for how long, does not by itself prove the existence of an express agreement for post–cohabitation rehabilitative support or an equitable division of separate property acquired or improved during cohabitation. *Boland v. Catalano*, 202 Conn. 333, 339, 521 A.2d 142, 145 (1987). In this case, there was no express agreement on either subject. We do not reach the question of whether and to what extent such an agreement can be enforced.

The joint checking accounts do not prove an express agreement. Hawaii's Uniform Probate Code provides in HRS § 560:6–103(a) (1985), as follows: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In this case, there is no clear and convincing evidence of a different intent.

## 3.
## Contract Implied–in–Fact

Aelbert contends that where cohabitants, if they were both reasonable people, would both have understood, intended, and expected that upon the termination of their cohabitation, (a) one would have rehabilitative support obligations to the other and (b) one would be entitled to an equitable share of the other's property,

the law will imply–in–fact a contract between them on those terms. *See Carroll v. Lee*, 148 Ariz. 10, 712 P.2d 923 (1986); *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303 (1987); 17 Am. Jur. 2d *Contracts* § 3 (1964).

We do not reach the issue raised by Aelbert. Cohabitation, no matter for how long, does nòt by itself prove the existence of a contract implied–in–fact. *Boland v. Catalano, supra.* Here, Hyde reasonàbly understood, intended, and expected that upon the termination of her cohabitation with Aelbert, she would not be obligated (a) to pay rehabilitative support to Aelbert and (b) to share the increase in the net market value of her property during cohabitation with Aelbert.

## 4.
### Equitable Estoppel

Aelbert contends that because Hyde allowed all persons, other than herself and Aelbert, to believe that she and Aelbert were married, she is equitably estopped from denying his entitlement to rehabilitative support from her and a share of her property. We disagree.

The material elements of equitable estoppel require one person to wilfully cause another person to erroneously believe a certain state of things and the other person to reasonably rely on his or her erroneous belief to his or her detriment. *Strouss v. Simmons*, 66 Haw. 32, 657 P.2d 1004 (1982); *Anderson v. Anderson*, 59 Haw. 575, 585 P.2d 938 (1978). Aelbert failed to prove the material elements of equitable estoppel. We do not reach the question of whether and to what extent equitable estoppel can be applied in such a situation.

## 5.
## Quasi–Estoppel

Quasi–estoppel "precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him." *Hartmann v. Bertelmann*, 39 Haw. 619, 628 (1952) (quoting *Montclair·Trust Co. v. Russell Co.*, 135 N.J. Eq. 570, 573, 39 A.2d 641, 643 (1944)). In the case at bar, the fact is that Hyde never took the position that Aelbert was or would be entitled to support from her and a share of her property. We do not reach the question of whether and to what extent quasi–estoppel can be applied in such a situation. If quasi–estoppel applies in this case, it applies against Aelbert.

## 6.
## Constructive Trust

Aelbert contends that the lower court reversibly erred when it did not conclude that Hyde held a part of the Kamaoa Road property as a constructive trustee for his benefit. In other words, he contends that the evidence is clear and convincing that Hyde will be unjustly enriched if she is permitted to retain all of the Kamaoa Road property, *Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 139–40, 552 P.2d 635, 637–38 (1976), and that Hyde unfairly owns all of the Kamaoa Road property because a portion justly belongs to him. *See DeMello v. Home Escrow, Inc.*, 4 Haw. App. 41, 48, 659 P.2d 759, 764 (1983).

Assuming without deciding that the remedy of constructive trust is available in this case, Aelbert must prove the value of his entitlement. Here, the lower court awarded him $35,000.00 of the value of the Kamaoa Road property. In light of the facts, the family court's decision not to award him more is not reversible error.

## CONCLUSION

Accordingly, we affirm the lower court's November 29, 1988 Findings of Fact and Conclusions of Law, February 15, 1989 Partial Judgment, and September 15, 1989 Final Judgment.

*Stuart M. Cowan* (*P. Gregory Frey* with him on the briefs; Cowan & Frey, of counsel) for defendant–appellant.

*William C. Darrah* (*Lucinda John* with him on the brief) for plaintiff–appellee.

*Richard A. Roadhouse*, pro se amicus curiae (*George W. Playdon* and *Jerrold K. Guben* on the brief; Reinwald O'Connor Marrack Hoskins & Playdon, of counsel).

*Robert A. Smith*, on the brief, for amicus curiae Hwa Cha Mun.