[No. B056825. Second Dist., Div. Three. Mar. 29, 1993.]

BIRGIT BERGEN, Plaintiff and Respondent, v.
DUANE WOOD, Defendant and Appellant.

COUNSEL

Goldman & Kagon, A. David Kagon and Jared Laskin for Defendant and Appellant.

Marvin M. Mitchelson and Ira G. Derdiger for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Duane Wood (Wood) appeals a judgment following a bench trial in favor of plaintiff and respondent Birgit Bergen (Bergen).

The essential issue in this "palimony" case is whether the trial court erred in awarding support to Bergen.

Because the parties never cohabited and the services Bergen rendered to Wood are not the type which is considered valuable consideration necessary to support a contractual promise, the judgment is reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

Wood, a Bel-Air resident, was a former president of Lockheed and a widower. He met Bergen, a German actress, in Monte Carlo in the summer of 1981. At that time, Wood was 65 and Bergen was 45. They quickly developed an intimate relationship.

The parties never cohabited. Bergen maintained her apartment in Munich, Germany. While Bergen was in California she kept a room at the Beverly Pavilion Hotel in Beverly Hills. Bergen was Wood's travelling companion and accompanied him to social events. Wood provided Bergen with money, and paid for travel expenses and hotel accommodations.

The relationship ended after seven years in late 1988, after Bergen retained Attorney Marvin M. Mitchelson to represent her concerning various property and contractual claims arising from the relationship.

In April 1989, Bergen filed a complaint against Wood for breach of express contract, breach of implied contract and fraud and deceit.

Bergen alleged: In July 1982, the parties entered into an oral agreement whereby she agreed to be Wood's "companion, his confidante, homemaker,

and assist [Wood] with his business affairs by acting as a social hostess." In return, Wood would provide for her financial support in accordance with her needs and his ability to pay.

Following a bench trial at which both parties and various witnesses testified, the trial court issued an extensive statement of decision, which is summarized as follows:

There was no implied-in-fact contract and no conduct by Wood to support the claim of fraud and deceit. However, there was an oral contract between the parties that Wood would provide for Bergen's support. This was not a meretricious relationship and sexual relations were collateral to the companionship of the parties. Bergen was a beautiful woman and Wood wanted to be seen with her. He took her to business and social functions all over the world. Bergen escorted and accompanied Wood as he desired, serving as his hostess and companion. While Wood repeatedly promised Bergen he would always provide for her, there were no discussions or promises between the parties regarding the *specific* duration or amount of support, or whether support would continue after the relationship ended. Despite the lack of express terms, the duration and amount of support could be ascertained from the circumstances, including the prior level of support. Based thereon, Bergen was entitled to $3,500 per month for 48 months.

The trial court also found: Severing the sexual aspects of the relationship, Bergen's services as a social companion and hostess were adequate consideration for the support promises. Wood was estopped to assert the statute of frauds. The lack of cohabitation did not preclude recovery by Bergen. And, Bergen did not sacrifice her movie career for the relationship.

Wood appealed from the judgment.

## CONTENTIONS

Wood contends: (1) in order to recover an award of "palimony" for services as an escort and companion, a sexual partner must prove cohabitation, which element is lacking here; (2) Bergen cannot recover damages because the contract was based upon an inseparable consideration of sexual services; (3) the judgment for four years of postseparation support must be reversed because it violates the principle that support should not be awarded unless it is warranted to protect the expectations of both parties; (4) there should be no award of support because the trial court found there was no express agreement for postrelationship support and Bergen testified she only expected support during the relationship; (5) the agreement found by the trial

court is too vague to be enforced; (6) if the agreement required Bergen to remain in the relationship, she breached it, and if the agreement allowed Bergen to end the relationship and collect support, it is unenforceable for lack of mutuality; and (7) the judgment cannot be sustained because it fails to provide support shall terminate upon death or remarriage.

## DISCUSSION

1. *Trial court erred in awarding any support because lack of consideration is fatal to Bergen's claim.*

  a. *Overview.*

In *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 666 [134 Cal.Rptr. 815, 557 P.2d 106], Michelle brought an action against Lee, alleging the parties had lived together for six years and had agreed he would support her for life. The trial court granted judgment on the pleadings for defendant.

The Supreme Court reversed, holding the complaint stated a cause of action for breach of an express contract. It stated: "[W]e base our opinion on the principle that adults *who voluntarily live together* and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights. . . . So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, . . ." (*Marvin, supra*, 18 Cal.3d at p. 674, italics added.)

Since *Marvin*, case law has held recovery by an unmarried partner under *Marvin* requires a showing of a stable and significant relationship arising out of cohabitation.

In *Taylor* v. *Fields* (1986) 178 Cal.App.3d 653 [224 Cal.Rptr. 186], Flossie sued Leo's widow, Jean, alleging Leo had promised to take care of Flossie financially for the rest of her life in exchange for her serving as his companion and confidante. Flossie and Leo had never cohabited during their 42-year relationship. During the entire period of his relationship with Flossie, Leo was married to and lived with Jean. Also, during the first 20 years of the relationship, Flossie was married to and lived with her own husband. (*Id.*, at pp. 656-657.)

*Taylor* affirmed a summary judgment against Flossie, observing that in *Marvin* and its progeny, the parties had lived together in stable nonmarital relationships. (*Taylor, supra*, 178 Cal.App.3d at p. 663.) *Taylor* concluded

cohabitation was a prerequisite to bring the relationship within *Marvin* principles. (*Taylor, supra,* at p. 663.)

Cohabitation is necessary not in and of itself, but rather, because from cohabitation flows the rendition of domestic services, which services amount to lawful consideration for a contract between the parties.

We make the additional observation that if cohabitation were not a prerequisite to recovery, every dating relationship would have the potential for giving rise to such claims, a result no one favors.

*Milian* v. *De Leon* (1986) 181 Cal.App.3d 1185 [226 Cal.Rptr. 831], which allowed recovery despite a lack of cohabitation, is inapposite. There, the parties dated for eight years. (*Id.,* at p. 1189.) They jointly purchased a house with the contemplation of marriage. (*Ibid.*) When the relationship ended, a dispute arose over the division of their real and personal property. (*Id.,* at p. 1191.) *Milian* held cohabitation and the rendition of housekeeping and similar services were important factors in determining the existence of an implied agreement or tacit understanding under *Marvin*, but cohabitation was not a prerequisite to finding an implied agreement between unmarried persons concerning their property. (*Milian, supra,* at p. 1193.)

*Milian* is distinguishable because it involved an action for partition of jointly purchased property, not a claim for future support. (*Milian, supra,* 181 Cal.App.3d at p. 1191.) In view of the issues in *Milian*, cohabitation, or the lack thereof, had no bearing on the respective rights of the parties in the subject property. (*Id.,* at p. 1193.)

> b. *Bergen's claim is barred because of the absence of any consideration severable from the sexual relationship.*

█ The agreement is unenforceable because the parties did not cohabit and therefore no consideration by Bergen existed severable from the sexual relationship.

*Marvin* allows for enforcement of a contract of parties living together in a sexual relationship unless sexual services form an inseparable part of the consideration for the agreement. (*Marvin, supra,* 18 Cal.3d at p. 672.)

In *Taylor*, there was no such severable consideration. Flossie alleged she acted as Leo's confidante, friend, travel companion and lover in return for his promises of lifetime financial care. (*Taylor, supra,* 178 Cal.App.3d at p. 665.) *Taylor* held Flossie's role as Leo's lover was an inseparable part of the

consideration for the agreement, rendering it unenforceable in its entirety. (*Ibid.*)

In *Jones* v. *Daly* (1981) 122 Cal.App.3d 500, 505 [176 Cal.Rptr. 130], involving a cohabitation agreement between two men, the plaintiff alleged he agreed to render services as " 'lover, companion, homemaker, traveling companion, housekeeper and cook' " in exchange for lifetime financial support. *Jones* found the agreement was unenforceable in its entirety because the plaintiff's rendition of sexual services formed an inseparable part of the consideration for the agreement. (*Id.*, at p. 509.)

It appears *Jones* was wrongly decided because *Marvin* states homemaking services are lawful consideration for an agreement relating to earnings, property or expenses. (*Marvin, supra*, 18 Cal.3d at p. 670, fn. 5; *Whorton* v. *Dillingham* (1988) 202 Cal.App.3d 447, 455, fn. 5 [248 Cal.Rptr. 405].) Thus, Michelle Marvin was able to allege lawful consideration based on her services as a " 'homemaker, housekeeper and cook,' " which services were severable from the sexual aspect of the relationship. (*Marvin, supra*, at pp. 666, 670-672.)

*Whorton* v. *Dillingham, supra*, 202 Cal.App.3d 447, which is better reasoned than *Jones*, explains what types of services are considered *independent* of the sexual relationship.

In *Whorton*, which also involved a male couple, the plaintiff alleged he provided services as "a chauffeur, bodyguard, secretary, and partner and counselor in real estate investments." (*Whorton, supra*, 202 Cal.App.3d at p. 454.) *Whorton* explained such services "are of monetary value, and the type for which one would expect to be compensated unless there is evidence of a contrary intent. Thus, they are properly characterized as consideration independent of the sexual aspect of the relationship. By way of comparison, such services as being a constant companion and confidant are not the type which are usually monetarily compensated nor considered to have a 'value' for purposes of contract consideration, and, absent peculiar circumstances, would likely be considered so intertwined with the sexual relationship as to be inseparable." (*Id.*, at p. 454.) Therefore, Whorton's allegations stated a cause of action arising from a contract supported by valuable consideration independent of sexual services. (*Ibid.*)

In the instant case, in addition to rendering sexual services, Bergen acted as Wood's "social companion" and "hostess." Because services as a social companion and hostess are not normally compensated and are inextricably intertwined with the sexual relationship (see *Whorton, supra*, 202

Cal.App.3d at p. 454), Bergen failed to show any consideration independent of the sexual aspect of the relationship. Therefore, the agreement was unenforceable for lack of consideration.

### DISPOSITION

The judgment is reversed. Each party to bear respective costs on appeal.

Croskey, J., and Kitching, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 15, 1993.