949 A.2d 743

HELEN MARY DEVANEY, PLAINTIFF–APPELLANT, v. FRANCIS A. L'ESPERANCE, JR., DEFENDANT–RESPONDENT.

Argued January 22, 2008—Decided June 17, 2008.

*JoAnne Juliano Giger* argued the cause for appellant (*Newman, McDonough, Schofel & Giger,* attorneys; *Ms. Giger* and *Laurence Desind,* on the brief).

*William Goldberg* argued the cause for respondent.

Justice WALLACE, JR., delivered the opinion of the Court.

In this appeal, we determine whether cohabitation is an indispensable element of a cause of action for palimony. Plaintiff and defendant were involved in an intimate relationship. During the course of their twenty-year relationship, defendant, who was married, continued to live with his wife and never cohabited with plaintiff. However, he promised to divorce his wife, marry plaintiff, and have a child with her. Defendant's promises were not fulfilled and his relationship with plaintiff eventually ended.

Plaintiff filed a palimony complaint against defendant, asserting a breach of a promise to support her for life. The trial court denied relief because the parties essentially had a dating relationship rather than a marital-type relationship that was needed to support a palimony claim. The Appellate Division affirmed solely because the parties never cohabited. We granted certification to address whether a party may prove a cause of action for palimony absent cohabitation.

We hold that cohabitation is not an essential requirement for a cause of action for palimony, but a marital-type relationship is required. Because there was sufficient evidence for the trial court

to conclude that the parties' relationship was not a marital-type relationship to support a palimony action, we affirm the judgment.

I.

The following evidence was presented at trial. In 1983, plaintiff, Helen Devaney, then twenty-three years old, began working for defendant, Francis L'Esperance, Jr., as a receptionist for his ophthalmology medical practice. At that time, defendant was fifty-one years old and had been married to his current wife for approximately twenty years. Plaintiff and defendant embarked on a romantic relationship. Although plaintiff was aware that defendant was married, she believed that he would divorce his wife.

In the beginning of their relationship, plaintiff lived in a variety of places, all of which were rented in her own name and mostly self-financed. At some point, defendant began paying plaintiff's telephone bill and gave her money for various other things. Plaintiff, however, remained largely self-sufficient during this period of their relationship. She continued working for defendant in various capacities, at first full-time, and then part-time.

For about ten years, plaintiff and defendant saw each other regularly and would spend vacations together. However, when the parties were not traveling, they rarely stayed overnight together. Defendant frequently had dinner at plaintiff's house, but he invariably returned home to his wife.

Plaintiff testified that defendant repeatedly told her that he would divorce his wife and marry her. In 1993, plaintiff terminated her employment with defendant and pursued educational opportunities. Shortly thereafter, plaintiff moved to Connecticut. A year later, she moved to Seattle, Washington, where she remained for approximately three years. Plaintiff testified that her decision to move was based primarily on defendant's unfulfilled promise to divorce his wife. During her stay in Seattle, plaintiff frequently spoke by telephone with defendant and requested money from him. Defendant would send her approximately four hundred

dollars a month to cover her incidental expenses. During the time that plaintiff lived in Seattle, defendant visited her six or seven times.

In 1997, defendant asked plaintiff to return to the East Coast. Plaintiff testified that defendant promised that he would "make things right" by divorcing his wife, marrying plaintiff, and having a baby with her. She testified that she agreed to move back after defendant showed her a separation agreement that was signed by both defendant and his wife. Plaintiff also testified that defendant promised to buy her a home.

Plaintiff returned to New Jersey in 1997, and moved into a North Bergen condominium that defendant leased for her. In 1999, defendant purchased the condominium unit and plaintiff continued to reside there. Defendant also purchased a car that plaintiff used; gave her money for various expenses; and paid for her undergraduate and graduate education. Plaintiff ultimately received a Master's degree.

Despite the increased support that defendant provided to plaintiff, the parties saw each other no more than two or three evenings at the condominium for dinner each week and sometimes one day on the weekend. During the seven years that plaintiff lived in the condominium, defendant spent only six or seven nights there.

In 2003, the parties considered having a child together. However, at some point, plaintiff learned that she would have difficulty conceiving a child. Defendant also changed his mind about wanting to have another child in August 2003 and conveyed that to plaintiff.

Finally, defendant told plaintiff that he wanted to discontinue the relationship. Plaintiff continued to live in the North Bergen condominium, and in December 2003, she began a relationship with another man. In February 2004, defendant attempted to visit the condominium when plaintiff's new boyfriend was present, but defendant was denied entrance by plaintiff.

Shortly thereafter, defendant sought to remove plaintiff from the condominium and filed an action for ejectment. Eventually, the trial court granted defendant possession of the condominium and the judgment was affirmed on appeal.

Plaintiff filed a complaint for palimony in October 2004, and defendant filed an answer. Following discovery, a bench trial was held. The Family Part judge issued an oral opinion in which she denied plaintiff's complaint for palimony. The judge found that defendant had made "general promises" to plaintiff that he would take care of her and that "things would work out," and that plaintiff used those promises to sustain her belief that they would eventually live together. Further, although over the years plaintiff became financially dependent on defendant, defendant never promised to provide plaintiff with lifetime financial support.

The trial judge rejected plaintiff's contention that the parties entered into an implied agreement for support, and citing *In re Estate of Roccamonte*, 174 *N.J.* 381, 808 *A.*2d 838 (2002), found that such an agreement requires that the parties have entered into a "marital-type" relationship. The judge cited several factors that contributed to her conclusion that the parties' relationship was not akin to a marriage. The judge considered that the parties had not cohabited, had not spent significant periods of time together, and had not demonstrated an intention to commingle property. The judge also found that although defendant did visit with plaintiff's family, the parties did not hold themselves out to the public as husband and wife and plaintiff did not attend social gatherings with defendant's friends, family, or colleagues.

In addition, the judge found that plaintiff's contributions to the relationship were not similar to those a wife would make in a marriage. Although plaintiff provided defendant with companionship and helped with some of his personal and business matters, the judge found no evidence that those actions were more than a typical dating relationship. Finally, the judge denied plaintiff's request for counsel fees because the equities weighed against such an award.

Plaintiff appealed. The Appellate Division affirmed the trial court's decision denying plaintiff palimony. *Devaney v. L'Esperance*, 391 *N.J.Super.* 448, 918 *A.*2d 684 (App.Div.2007). The panel held that under New Jersey law, cohabitation is an essential element to a cause of action for palimony and because the parties never lived together, plaintiff was not entitled to the requested relief. *Id.* at 451–52, 918 *A.*2d 684. The panel also affirmed the denial of plaintiff's claim for counsel fees. *Ibid.*

We granted plaintiff's petition for certification. *Devaney v. L'Esperance*, 192 *N.J.* 72, 926 *A.*2d 856 (2007).

## II.

Plaintiff argues that the Appellate Division erroneously held that cohabitation is an indispensable element of a palimony cause of action. She contends that consistent with *Roccamonte, supra,* in which the Court defined a marital-type relationship as "the undertaking of a way of life in which two people commit to each other," 174 *N.J.* at 392, 808 *A.*2d 838, cohabitation is a relevant, but not a necessary, factor. Plaintiff contends that the parties' relationship satisfied *Roccamonte* because they committed to each other, provided companionship, and met each other's financial, emotional, physical, and social needs. Plaintiff asserts that her entering into such a relationship and subsequently conducting herself in accordance with its unique character was consideration in full measure to make defendant's promise of lifetime support enforceable. She also argues that the parties' attempt to conceive a child was evidence of a marital-type relationship and that equity requires an award of palimony because she devoted herself to defendant for almost twenty years in reliance on defendant's promises that he would divorce his wife, marry plaintiff, and have a child with her. Further, she contends that whether she is entitled to counsel fees should await the ultimate disposition of this matter.

In contrast, defendant argues that the Appellate Division's holding is correct because the law is "settled" that cohabitation is

a prerequisite to a claim for palimony, and the fact that he was married and living with his wife during the entire course of the parties' relationship weighs against the finding of a marital-type relationship. He notes that under *Roccamonte,* a critical ingredient to a marital-type relationship is that two people commit to each other, foregoing other liaisons and opportunities and that did not happen in this case. Moreover, defendant argues that an attempt to have a child should not create an entitlement to palimony because there is no public interest in promoting childbearing in the context of an adulterous relationship. In addition, he contends that plaintiff was enriched by the fact that he paid for her education, and she is now capable of supporting herself. Defendant contends that soon after the parties broke up, she met another man, and became engaged to marry him, and therefore, there is no evidence of a "profound dependency" on defendant. Finally, defendant argues that the Appellate Division correctly upheld the trial judge's determination that neither party should receive counsel fees as a reasonable exercise of discretion.

### III.

Preliminarily, we trace our history of a cause of action for palimony, which in general terms is a claim for support between unmarried persons. We first recognized such a cause of action in *Kozlowski v. Kozlowski,* 80 *N.J.* 378, 403 *A.*2d 902 (1979). Prior to that decision, our courts would not enforce support agreements between unmarried individuals or married persons who lived together with someone other than their spouses because they were considered meretricious.

In *Kozlowski,* both the defendant and the plaintiff were married to other persons when the defendant induced the plaintiff to leave her husband and come live with him. *Id.* at 381, 403 *A.*2d 902. The parties lived as a normal family unit for approximately six years. During that time, three of the four children of the two families came to live with the couple in their new home. *Ibid.* Although a serious disagreement caused them to separate for a

week, the defendant wanted to resume the relationship and promised to take care of and provide for the plaintiff for the rest of her life if she would return. *Id.* at 382, 403 *A.*2d 902. The plaintiff agreed and the parties resumed their relationship for about nine more years before the defendant broke it off for another woman. *Ibid.*

The plaintiff filed suit against the defendant, seeking, among other things, future support for life. The trial court found that the defendant expressly agreed to support the plaintiff for the rest of her life and that such a promise was enforceable. *Id.* at 384–85, 403 *A.*2d 902. While the appeal was pending in the Appellate Division, this Court certified the appeal. *Id.* at 381, 403 *A.*2d 902. The Court acknowledged the changing mores that resulted in many unmarried persons living together and adopted the view expressed by the California Supreme Court, which declared:

> In summary, we believe that the prevalence of nonmarital relationships in modern society and the social acceptance of them, marks this as a time when our courts should by no means apply the doctrine of the unlawfulness of the so-called meretricious relationship to the instant case. As we have explained, the nonenforceability of agreements expressly providing for meretricious conduct rested upon the fact that such conduct, as the word suggests, pertained to and encompassed prostitution. To equate the nonmarital relationship of today to such a subject matter. is to do violence to an accepted and wholly different practice.

> We are aware that many young couples live together without the solemnization of marriage, in order to make sure that they can successfully later undertake marriage. This trial period, preliminary to marriage, serves as some assurance that the marriage will not subsequently end in dissolution to the harm of both parties. We are aware, as we have stated, of the pervasiveness of nonmarital relationships in other situations.

> The mores of the society have indeed changed so radically in regard to cohabitation that we cannot impose a standard based on alleged moral considerations that have apparently been so widely abandoned by so many.

> We conclude that the judicial barriers that may stand in the way of a policy based upon the fulfillment of the reasonable expectations of the parties to a nonmarital relationship should be removed. As we have explained, the courts now hold that express agreements will be enforced unless they rest on an unlawful meretricious consideration.

> [*Id.* at 385–86, 403 *A.*2d 902 (quoting *Marvin v. Marvin,* 18 *Cal.*3d 660, 134 *Cal.Rptr.* 815, 557 *P.*2d 106, 122 (1976)).]

The Court recognized that such an agreement may be expressed or implied because the "[p]arties entering this type of relationship usually do not record their understanding in specific legalese." *Id.* at 384, 403 *A.*2d 902. The Court concluded that "an agreement between adult parties living together is enforceable to the extent it is not based on a relationship proscribed by law, or on a promise to marry." *Id.* at 387, 403 *A.*2d 902.

Three years later, the Court applied the *Kozlowski* principles in *Crowe v. DeGioia*, 90 *N.J.* 126, 447 *A.*2d 173 (1982). There, the plaintiff met the defendant in 1960 when she was separated from her husband. The defendant was single and agreed that the plaintiff and her seven children could live with him. *Id.* at 129, 447 *A.*2d 173. The plaintiff alleged that the two lived together for twenty years in a relationship that was akin to a marriage and that the defendant told her that "he would take care of her and support her for the rest of her life." *Ibid.* When the defendant broke off the relationship, he promised to give her a good settlement, but never did. *Id.* at 129–30, 447 *A.*2d 173. The plaintiff filed a complaint seeking support and temporary relief. *Ibid.* The trial court granted temporary relief, but the Appellate Division reversed. *Id.* at 131, 447 *A.*2d 173. After reaffirming that the plaintiff was not entitled to alimony because the parties were not married, this Court applied traditional equitable principles to authorize preliminary relief. *Id.* at 132–36, 447 *A.*2d 173. The Court explained that

[t]he inability to fit [the] plaintiff's claim for temporary relief into the conventional category of a matrimonial action is not a bar to relief. To achieve substantial justice in other cases, we have adjusted the rights and duties of parties in light of the realities of their relationship. Increasing numbers of unmarried couples live together .... Although [the] plaintiff need not be rewarded for cohabitating with [the] defendant, she should not be penalized simply because she lived with him in consideration of a promise for support. Our endeavor is to shape a remedy that will protect the legally cognizable interests of the parties and serve the needs of justice.

[*Id.* at 135, 447 *A.*2d 173 (internal citations omitted).]

Thus, the Court affirmed the trial court's grant of preliminary relief and remanded for a plenary hearing to resolve the factual dispute. *Ibid.*

The most recent case in which this Court addressed palimony is *Roccamonte, supra,* 174 *N.J.* at 381, 808 *A.*2d 838. In that case, the issue was whether the promise of support for life was enforceable against the decedent's estate. Each party was married to another person when they met in the 1950's. *Id.* at 385–86, 808 *A.*2d 838. The parties began a relationship and eventually lived together off and on until the plaintiff sought to end the relationship because the defendant refused to divorce his wife and marry her. *Ibid.* The plaintiff moved to California in mid–1960, but returned when the defendant promised that he would financially support her for the rest of her life if she would come back to him. *Ibid.* The plaintiff agreed. *Ibid.* She divorced her husband and the parties lived together as if they were husband and wife until the defendant's death. *Id.* at 387, 808 *A.*2d 838. However, the defendant never divorced his wife. *Id.* at 386, 808 *A.*2d 838. Although the defendant promised the plaintiff that if he were to die first he would provide for her during her lifetime, he died intestate. *Id.* at 387, 808 *A.*2d 838. The plaintiff received the proceeds of a life insurance policy on the defendant's life and some other assets, but she believed that the defendant failed to keep his promise to support her for life. *Ibid.* The plaintiff commenced a palimony action in October 1995 against the defendant's estate seeking a "lump-sum support award." *Ibid.* The trial court ultimately granted the estate's motion for summary judgment, and dismissed the complaint. *Ibid.* The Appellate Division reversed, and remanded for a hearing on the plaintiff's entitlement to support on a contract theory. *Id.* at 388, 808 *A.*2d 838. A bench trial was held, and the trial court rejected the plaintiff's theories and dismissed the complaint. *Ibid.* The Appellate Division affirmed. *Ibid.*

This Court reviewed its prior palimony cases and explained that such highly personal contracts require that the Court take special care to "determine whether such a contract has been entered into and what its terms are." *Id.* at 389, 808 *A.*2d 838. The Court made clear that the fundamental principle of New Jersey's palimony cases is that "the formation of a marital-type relationship

between unmarried persons may, legitimately and enforceably, rest upon a promise by one to support the other." *Id.* at 392, 808 *A.*2d 838. The Court expressly declared that "the entry into [a marital-type relationship] and then conducting oneself in accordance with its unique character is [sufficient] consideration" to enforce a promise for support. *Id.* at 393, 808 *A.*2d 838. Importantly, the Court defined a marital-type relationship as one

in which people commit to each other, foregoing other liaisons and opportunities, doing for each other whatever each is capable of doing, providing companionship, and fulfilling each other's needs, financial, emotional, physical, and social, as best as they are able. And each couple defines its way of life and each partner's expected contribution to it in its own way. Whatever other consideration may be involved, the entry into such a relationship and then conducting oneself in accordance with its unique character is consideration in full measure.

[*Id.* at 392–93, 808 *A.*2d 838.]

The Court noted that because the trial court had not properly applied the palimony principles of *Kozlowski* and *Crowe,* it would exercise original jurisdiction and determine if the defendant made an express or implied contract to support the plaintiff. *Id.* at 394, 808 *A.*2d 838. The Court scrutinized the record and found that the evidence supported the conclusion that the defendant promised to support the plaintiff for life. *Id.* at 395, 808 *A.*2d 838. The Court explained that

[i]t is not disputed that [the defendant's] final break from his family and his marital-like relationship with [the] plaintiff resulted from his successful efforts to induce [the] plaintiff's return to him after she had moved to California to make a new life for herself because she had despaired of [the defendant's] willingness ever to divorce his wife and marry her. There is no reasonable inference that can be drawn from her abandonment of that plan at his insistence and the resulting reunion other than that she relied on his representations, express or implied, that her future would be neither prejudiced nor compromised. It is also beyond dispute that [the defendant] was concerned for [the] plaintiff's economic well-being and provided for her lavishly during their twenty-five years together as well as during the first extended period of their relationship.... The promise, clearly implied, if not express, that he would see to it that she was adequately provided for during her lifetime ... seems to us to have been both the corollary for and the condition of their relationship for the last quarter century of [the defendant's] life.

[*Ibid.*]

The Court remanded the matter to the trial court for a determination of the level of support to be awarded to the plaintiff. *Id.* at 399, 808 *A.*2d 838.

■ We turn now to the present case. The question we have not previously addressed is whether the parties may have a marital-type relationship, which is the underpinning of the consideration needed to support a claim for palimony, when they have not cohabited. The panel below and several other published Appellate Division opinions have interpreted our jurisprudence to require cohabitation as an indispensable element of a palimony action. *See Levine v. Konvitz,* 383 *N.J.Super.* 1, 2, 890 *A.*2d 354 (App.Div.) (holding that plenary action based on extra-marital relationship over seventy years failed because parties never cohabitated), *certif. denied,* 186 *N.J.* 607, 897 *A.*2d 1061 (2006); *McDonald v. Estate of Mavety,* 383 *N.J.Super.* 347, 360, 891 *A.*2d 1218 (App.Div.) (noting that "a critical element of a palimony claim is cohabitation for a significant period of time"), *certif. denied,* 187 *N.J.* 79, 899 *A.*2d 302 (2006); *see also In re Estate of Sasson,* 387 *N.J.Super.* 459, 467–68, 904 *A.*2d 769 (App.Div.) (noting that cohabitation required for prima facie case for palimony and affirming trial court's determination that cohabitation period of less than three years was insufficient), *certif. denied,* 189 *N.J.* 103, 912 *A.*2d 1263 (2006).

We do not read our jurisprudence as being so confining to make cohabitation a necessary requirement to a successful claim for palimony. Rather we opt for a more flexible approach that seeks to achieve substantial justice in light of the realities of the relationship. It is the promise to support, expressed or implied, coupled with a marital-type relationship, that are the indispensable elements to support a valid claim for palimony.

Indeed, whether the parties cohabited is a relevant factor in the analysis of whether a marital-type relationship exists, and in most successful palimony cases, cohabitation will be present. We recognize, however, that palimony cases present highly personal arrangements and the facts surrounding the relationship will

determine whether it is a marital-type relationship that is essential to support a cause of action for palimony. There may be circumstances where a couple may hold themselves out to others as if they were married and yet not cohabit (i.e., couples who are separated due to employment, military, or educational opportunities and who do not cohabit). The trier of fact must consider the realities of the relationship in the quest to achieve substantial justice. Therefore, in addressing a cause of action for palimony, the trial judge should consider the *entirety* of the relationship and, if a marital-type relationship is otherwise proven, it should not be rejected solely because cohabitation is not present.

Just as important, "[w]e have recognized that Family Part judges have developed a special expertise in dealing with family and family-type matters." *Roccamonte, supra,* 174 *N.J.* at 399, 808 *A.*2d 838 (citing *Cesare v. Cesare,* 154 *N.J.* 394, 412–13, 713 *A.*2d 390 (1998)). That is, the Family court is well-equipped to consider highly personal facts and to determine whether a plaintiff's claim for support based on a marital-type relationship has merit.

The trial judge in the present case exemplified that expertise. In concluding that the parties did not enjoy a marital-type relationship, the judge found that the parties did not live together; they did not spend significant periods of time together; they did not commingle their property or share living expenses; and they did not hold themselves out to the public as husband and wife. The trial judge correctly considered the lack of cohabitation as a factor in reaching its determination and appropriately analyzed all of the factors of the highly personalized relationship between the parties, including the fact that defendant continued to live with his wife. Consequently, in rejecting plaintiff's argument of an implied contract to support her for life, the judge concluded that the marital-type relationship that informs the basis of a valid contract was lacking. As the trial judge so aptly phrased it, "the parties' relationship was best characterized as a dating relationship."

In summary, we hold that cohabitation is one of the many factors a trial judge should consider in determining whether a plaintiff has proven a marital-type relationship to support a cause of action for palimony. In these highly personalized cases, it is conceivable that a plaintiff, even in the absence of cohabitation, may establish a marital-type relationship and prove a cause of action for palimony. In the present case, however, there was sufficient credible evidence for the trial judge to reject plaintiff's palimony claim.

## IV.

We find no need to engage in an elaborate discussion of the trial judge's decision denying an award of counsel fees. In denying the parties' request for counsel fees, the trial judge considered the parties financial resources; the amount of fees previously paid by the parties; the results obtained in the action; the reasonableness and good faith of the parties; and whether equity required an award of counsel fees. We find no abuse of discretion in the judge's determination that neither party should receive an award for counsel fees.

## V.

As modified, the judgment of the Appellate Division affirming the trial court's rejection of plaintiff's claim for palimony is affirmed.

Justice LONG, concurring.

I write separately to express my view that although the Court's opinion is an entirely correct paradigm in an implied contract case like the one before us, it should not be read in the future as applicable to an express contract.

The right to support in a palimony action "does not derive from the relationship itself but rather is a right created by contract." *In re Estate of Roccamonte,* 174 *N.J.* 381, 389, 808 *A.2d* 838

(2002). To be enforceable, a contract must be supported by valuable consideration which involves a detriment incurred by a promisee or a benefit received by a promisor, at the promisor's request. *Shebar v. Sanyo Bus. Sys. Corp.*, 111 *N.J.* 276, 289, 544 *A.*2d 377 (1988). The nature and sufficiency of the consideration is not a factor so long as it has been bargained for. *Ibid.* Even where those requirements are satisfied, however, today, as at common law, certain contracts cannot be enforced, for example, contracts that are illegal or violative of public policy. *Vasquez v. Glassboro Serv. Ass'n*, 83 *N.J.* 86, 98–99, 415 *A.*2d 1156 (1980).

At common law, that bar applied where promises were based in whole or in part on sexual intercourse outside of the marriage relationship. 15 *Corbin on Contracts* § 81.4 (Perillo ed., rev. ed. 2003). Indeed, in a broad sweep, courts tended to view any contract arising from such a relationship as "meretricious" and unenforceable even if the relationship was not an express part of the bargain. *Ibid.*

In a watershed decision, the California Supreme Court in *Marvin v. Marvin*, 18 *Cal.*3d 660, 134 *Cal.Rptr.* 815, 557 *P.*2d 106 (1976), addressed the topic of meretricious consideration. In that case, the plaintiff who had cohabited with the defendant without the benefit of marriage sought, by way of a contract action, to enforce his promise that they would share earnings and property accumulated during their relationship. In reversing a judgment on the pleadings in the defendant's favor, the court in *Marvin* concluded that non-marital cohabitants should be treated "as any other persons," and that contracts between them are valid and enforceable so long as they are not solely and exclusively based on sexual services, i.e., prostitution. *Id.* at 815, 557 *P.*2d at 116. In other words, *Marvin* established the limited principle that cohabitation in itself is not meretricious and that the "judicial barriers that may stand in the way of a policy based upon the fulfillment of the reasonable expectations of the parties to a nonmarital relationship should be removed." *Id.* at 815, 557 *P.*2d at 122.

We fully subscribed to that holding in *Kozlowski v. Kozlowski*, 80 *N.J.* 378, 403 *A*.2d 902 (1979), which involved a contract claim for lifetime support by a plaintiff who had cohabited for many years with a defendant, again without the benefit of marriage. There we declared that there is no legal impediment to the enforcement of an agreement between adult parties living together, so long as the relationship is not proscribed by law or based on a promise to marry. *Id.* at 387, 403 *A*.2d 902.

The suggestion that *Marvin* and *Kozlowski* somehow established the cohabitation of the parties as an essential element of a common law contract action between romantic companions has wisely been rejected by my colleagues. Cohabitation only played a part in those decisions because it was advanced as an *impediment* to an otherwise maintainable contract action. In turn, a marital-type relationship was only considered in *Marvin* and *Kozlowski* because it raised the spectre of cohabitation. Indeed, all that *Marvin* and *Kozlowski* established was that living together in a marital-type relationship is *not* a meretricious disqualifier, not that those circumstances are the only route to a contract claim.

That is not to suggest that the existence of a marital-type relationship is irrelevant. To the contrary, it bears on the issues of contract formation and bargained-for consideration. Indeed, in an implied contract case such as the one before us, where courts look beyond what was said to the parties' acts, *Roccamonte, supra,* 174 *N.J.* at 389, 808 *A*.2d 838, it is hard to imagine that any scenario other than a marriage-type relationship would sustain the conclusion that an implied promise of lifetime support was made. It is for that reason that I concur in the result reached here.

I note as well that a party's actual willingness to live in a marital-type relationship is relevant to a consideration analysis. As we recognized in *Roccamonte,* "[w]hatever other consideration may be involved," the entry into a marital-type relationship "is consideration in full measure." *Id.* at 393, 808 *A*.2d 838.

My concern is that the Court's broad requirement of a marital-type relationship, which is entirely appropriate in an implied contract case such as this, will be carried over and bar enforcement of an express contract for lifetime support based on some other type of consideration. Under contract law, plaintiffs who have acted in reliance on an express promise for support and who have provided consideration other than conformance with marital roles are nevertheless entitled to recover.

The point is that, under our established case law, like every other person, a participant in a non-marital romantic relationship may recover in contract if she can show that she incurred a detriment in reliance on an express promise of support, that that promise was breached, and that she was damaged thereby. Any other conclusion would contradict our statement in *Roccamonte* that "a general promise of support for life, broadly expressed, made by one party to the other with *some form of consideration* given by the other will suffice to form a contract." *Id.* at 389–90, 808 *A.*2d 838 (quoting *Kozlowski, supra,* 80 *N.J.* at 384, 403 *A.*2d 902) (emphasis added).

To be sure, to succeed on a claim of an express promise for lifetime support will be difficult because those kinds of representations are rarely made in the presence of witnesses and are usually denied by the putative promisor when the relationship breaks down. Nevertheless, in a case in which a plaintiff in fact proves an express promise of lifetime support, and that she provided the agreed upon consideration, she should not be barred from recovery based on the absence of a marital-type relationship.

For example, had the trial judge in this case credited Ms. Devaney's claim of an express promise of lifetime support by Dr. L'Esperance, the only questions for disposition would be the nature of the agreed upon consideration for the promise and whether Ms. Devaney fully performed her part of the bargain. Any other approach would confound our contract law and render a so-called palimony case an independent cause of action based upon the nature of the parties' relationship. We have already rejected

that approach in *Kozlowski* and reaffirmed that view in *Roccamonte* where we said that the right to support in a palimony action "does not derive from the relationship itself but rather is a right created by contract." *Id.* at 389, 808 *A.*2d 838.

I write only to flag that issue for future consideration. In all other respects I am in accord with the majority's view.

Justice RIVERA–SOTO, concurring in the result.

Defining the cause of action for palimony "in general terms [as] a claim for support between unmarried persons[,]" *ante* at 253, 949 *A.*2d at 746, the majority declares that "cohabitation is not an essential requirement for a cause of action for palimony, but a marital-type relationship is required." *Id.* at 248, 949 *A.*2d at 744. However, from its inception, a cause of action for palimony, even if valid, always has required—at a bare minimum—objective proof of cohabitation. That requirement, and the rationale that undergirds it, require that the majority's reasoning be rejected. However, because the majority ultimately rejects plaintiff's palimony claim, I concur in the result.

I.

The majority correctly notes that this Court "first recognized [a palimony] cause of action in *Kozlowski v. Kozlowski*, 80 *N.J.* 378, 403 *A.*2d 902 (1979)[,]" and that "[p]rior to that decision, our courts would not enforce support agreements between unmarried individuals or married persons who lived together with someone other than their spouses[.]" *Ante* at 253, 949 *A.*2d at 746. *Kozlowski* embraced *Marvin v. Marvin*, 18 *Cal.*3d 660, 134 *Cal.Rptr.* 815, 557 *P.*2d 106, 122 (1976), where the Supreme Court of California held that modern mores required a more elastic view of when parties who are not married to one another nevertheless are entitled to a division of assets acquired during the relationship and, more to the point, whether—by virtue of the non-marital relationship—one has assumed a continuing obligation of support

and maintenance for the other.[1]  *Kozlowski* later led to *Crowe v. De Gioia,* 90 *N.J.* 126, 447 *A.*2d 173 (1982) (holding that equitable principles authorize enforcement of promise of support to unmarried but cohabiting party), and, more recently, to *In re Estate of Roccamonte,* 174 *N.J.* 381, 808 *A.*2d 838 (2002) (enforcing promise of support for life against decedent's estate even when parties were married to others when they cohabited).

From that premise, the majority defines the question presented as "whether the parties may have a marital-type relationship, which is the underpinning of the consideration needed to support a claim for palimony, when they have not cohabited." *Ante* at 258, 949 *A.*2d at 749. Concluding that cohabitation is not "a necessary requirement to a successful claim for palimony[,]" the majority instead "opt[s] for a more flexible approach that seeks to achieve substantial justice in light of the realities of the relationship." *Id.* at 258, 949 *A.*2d at 750. The majority concludes that "[i]t is the promise to support, expressed or implied, coupled with a marital-type relationship, that are the indispensable elements to support a valid claim for palimony[,]" explaining that "whether the parties cohabited is a relevant factor in the analysis of whether a marital-type relationship exists, and [that] in most successful palimony cases, cohabitation will be present." *Ibid.* Reasoning that "palimony cases present highly personal arrangements and the facts surrounding the relationship will determine whether it is a marital-type relationship that is essential to support a cause of action for palimony[,]" and that "[t]he trier of fact must consider the realities of the relationship in the quest to achieve substantial justice[,]" the majority defines the judicial task thusly: "in addressing a cause of action for palimony, the trial judge should

---

[1] Ironically, on remand, the trial court found that the defendant never had agreed to support the plaintiff for the remainder of her life, and only awarded the plaintiff living expenses during a limited rehabilitation period, an award that was vacated on appeal. *See generally* Ann Laquer Estin, *Unmarried Partners and the Legacy of Marvin v. Marvin: Ordinary Cohabitation,* 76 *Notre Dame L.Rev.* 1381, 1381–82 (2001).

consider the *entirety* of the relationship and, if a marital-type relationship is otherwise proven, it should not be rejected solely because cohabitation is not present." *Id.* at 259, 949 *A.*2d at 750. In sum, it is the majority's view that "cohabitation is one of the many factors a trial judge should consider in determining whether a plaintiff has proven a marital-type relationship to support a cause of action for palimony" and that, "[i]n these highly personalized cases, it is conceivable that a plaintiff, even in the absence of cohabitation, may establish a marital-type relationship and prove a cause of action for palimony." *Id.* at 260, 949 *A.*2d at 751.

## II.

*Kozlowski, Crowe,* and *Roccamonte* demonstrate that this Court indeed has recognized a cause of action for palimony. That recognition, however, is not without controversy. The majority does not mention, much less discuss, the objective fact that the overwhelming weight of authority nationwide rejects a claim for palimony—a post-nonmarital relationship support or alimony obligation—and instead limits recovery to what a cohabitant has contributed to the relationship.

As a threshold matter, Alabama, Idaho, Oklahoma, South Carolina and Utah recognize common law marriages, and, for that reason, do not allow palimony claims. *See, e.g., Beck v. Beck,* 286 *Ala.* 692, 246 *So.*2d 420 (1971); *Herd v. Herd,* 194 *Ala.* 613, 617, 69 *So.* 885, 887 (1915); *In re Estate of Wilkins,* 137 *Idaho* 315, 48 *P.*3d 644 (2002); *Mueggenborg v. Walling,* 836 *P.*2d 112 (Okla. 1992) (explaining that common law marriage requires, among other things, " 'consummating [the] arrangement by cohabitation' " (quoting *Rath v. Maness,* 470 *P.*2d 1011, 1013 (Okla.1970))); *Tarnowski v. Lieberman,* 348 *S.C.* 616, 560 *S.E.*2d 438 (App.2002); *Layton v. Layton,* 777 *P.*2d 504 (Utah Ct.App.1989).

The vast majority of states that do not acknowledge common

law marriages also have rejected a cause of action for palimony,[2] although most have allowed parties to recoup either assets brought into the relationship or the value of the services they have provided to the relationship. Thus, even though Alaska does not explicitly recognize a *Marvin*/palimony cause of action, it does allow for the division of property acquired during cohabitation, noting that "to the extent it is ascertainable, intent of the parties should control the distribution of property accumulated during the course of cohabitation." *Tolan v. Kimball,* 33 *P.*3d 1152, 1155 (Alaska 2001) (footnote omitted). Arkansas too does not recognize a palimony claim; although it forbids common law marriages under its laws, Arkansas does recognize common law marriages validly formed elsewhere. *Brissett v. Sykes,* 313 *Ark.* 515, 855 *S.W.*2d 330 (1993). Connecticut expressly states that "no right to palimony exists under Connecticut law." *Vibert v. Atchley,* 1996 WL 364777, at *2, 1996 *Conn.Super. LEXIS* 1353, at *7 (Conn.Super.Ct. May 23, 1996). However, Connecticut "[c]ourts will enforce a contract, express or implied, between non marital partners, and may employ equitable remedies to enforce those agreements where necessary." *Hrostek v. Massey,* 2007 WL 1677009, at *3, 2007 *Conn.Super. LEXIS* 1316, at *7 (Conn.Super.Ct. May 25, 2007) (citing *Boland v. Catalano,* 202 *Conn.* 333, 521 *A.*2d 142 (1987)). Delaware likewise rejects palimony claims, particularly when one of the parties is already married. *Wells v. Boardley,* 1981 WL 15150 (Del.Ch. July 23, 1981).

Georgia explicitly rejects any palimony claims. *Long v. Marino,* 212 *Ga.App.* 113, 441 *S.E.*2d 475 (1994). Illinois jettisons palimony claims as surrogates for outlawed common law marriages. *Hewitt v. Hewitt,* 77 *Ill.*2d 49, 31 *Ill.Dec.* 827, 394 *N.E.*2d 1204 (1979). Although it does not recognize palimony claims, Iowa

---

[2] Virginia also does not recognize common law marriage, all the while "recogniz[ing] as valid a common law marriage [ ] formed in accordance with the law of another state which recognizes common law marriage as valid." *Reynolds v. Reynolds,* 2003 WL 21278869, *4, 2003 *Va. Cir. LEXIS* 315, *10 (Va. Cir. Ct. June 4, 2003). No reported Virginia case discusses a cause of action for palimony.

allows unmarried cohabitants to enforce property claims based on "a recognized legal theory outside marriage to support the claim." *In re Marriage of Martin,* 681 *N.W.*2d 612, 619 (Iowa 2004). Kansas disallows a palimony claim, but provides for "equitable division of the property accumulated by the parties during the period they were living together[,]" *Eaton v. Johnston,* 235 *Kan.* 323, 327, 681 *P.*2d 606, 610 (1984), a view also shared by Mississippi, Montana, New Hampshire, South Dakota and West Virginia. *Davis v. Davis,* 643 *So.*2d 931 (Miss.1994); *In re Kynett,* 1994 *Mont. Dist. LEXIS* 224 (Mont.Dist.Ct. Dec. 1, 1994); *Tapley v. Tapley,* 122 *N.H.* 727, 729, 449 *A.*2d 1218, 1219 (1982) (refusing to "recognize a contract which is implied from the rendition and acceptance of 'housewifely services[,]' " but acknowledging that "upon the dissolution of a non-marital living arrangement, either party may seek a judicial determination of the equitable rights of the parties in particular property"); *Bracken v. Bracken,* 52 *S.D.* 252, 257, 217 *N.W.* 192, 194 (1927) ("[i]f a woman should assume the duties of a housewife and care for a home, while the man assumed the duties of a husband and ran the farm, although both parties knew there was no marriage, such assumed relation might have a great bearing in determining the right to wages of one against the other, or upon the interest of each in the property acquired in the joint enterprise"); *Thomas v. LaRosa,* 184 *W.Va.* 374, 400 *S.E.*2d 809 (1990).

Kentucky rejects palimony claims for a straightforward and logical reason: "[w]ere it otherwise, the courts, in effect, would be reinstituting by judicial fiat common law marriage which by expressed public policy is not recognized." *Murphy v. Bowen,* 756 *S.W.*2d 149, 150 (Ky.Ct.App.1988). Louisiana too rejects palimony claims. *Schwegmann v. Schwegmann,* 441 *So.*2d 316 (La.Ct.App. 1983). Holding that "[i]t is not right to treat unmarried people as if they were married[,]" Maine does not recognize a palimony claim, but does allow recovery for "business[-]related services" and for "domestic services performed solely to allow the defendant to devote more time to his business[.]" *Ring v. Thompson,* 1996 *Me.Super. LEXIS* 279, at *4–5 (Me.Super.Ct. Aug. 29, 1996).

Maryland bars a palimony cause of action based on a continued sexual relationship, *Donovan v. Scuderi*, 51 *Md.App.* 217, 443 *A.*2d 121 (1982), or a promise to marry "whether attired in the full raiment of the prohibited action or disguised as another type of action." *Miller v. Ratner*, 114 *Md.App.* 18, 51, 688 *A.*2d 976, 993 (1997). Michigan explicitly rejects, as a matter of public policy, the palimony cause of action set forth in *Marvin, supra*. *Carnes v. Sheldon*, 109 *Mich.App.* 204, 215, 311 *N.W.*2d 747, 752 (1981).

New York does not enforce contracts implied from the relationship of unmarried cohabitants, but does enforce express contracts for the distribution of earnings and assets acquired during the cohabitation. *Morone v. Morone*, 50 *N.Y.*2d 481, 429 *N.Y.S.*2d 592, 413 *N.E.*2d 1154 (1980). Ohio "decline[s] to follow [*Marvin, supra*, and like decisions] insofar as they recognize a new legal status for persons living together without benefit of marriage[,]" holding that "[t]here is no precedent in Ohio for dividing assets or property based on mere cohabitation without marriage[.]" *Lauper v. Harold*, 23 *Ohio App.*3d 168, 170, 492 *N.E.*2d 472, 474 (1985). Tennessee and Vermont do not allow palimony claims, but do enforce claims for property acquired during the relationship on a partnership theory. *Bass v. Bass*, 814 *S.W.*2d 38, 44 (Tenn.1991) (explaining that "[t]he fact that the parties cohabited ... has absolutely no bearing whatsoever [as a] partnership can be implied in this case while completely ignoring the parties' social relationship"); *Harman v. Rogers*, 147 *Vt.* 11, 510 *A.*2d 161 (1986).

Several states—Arizona, Colorado, Hawaii, Indiana, Massachusetts, Missouri, Nebraska, Nevada, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington and Wyoming—do not explicitly address whether a palimony claim for support is cognizable, focusing instead on whether assets acquired during the non-marital cohabitation relationship are divisible. *See, e.g., Cook v. Cook*, 142 *Ariz.* 573, 577, 691 *P.*2d 664, 668 (1984) (stating that although "[t]he law will not give to non-marital cohabiting parties the benefit of community property rights, since these rights derive solely from the marital relationship[,]" nevertheless " 'the fact that

the parties engaged in a meretricious relationship does not bar either from asserting against the other such claims as would be otherwise enforceable[,]' ")(quoting *Fernandez v. Garza,* 88 *Ariz.* 214, 219, 354 *P.2d* 260, 263 (1960)); *Salzman v. Bachrach,* 996 *P.2d* 1263 (Colo.2000); *Maria v. Freitas,* 73 *Haw.* 266, 275, 832 *P.2d* 259, 264 (1992) (recognizing that "marriage holds 'positive and negative legal consequences for each party[and that a] person who is not legally married does not qualify for the positive legal consequences of marriage.'" (quoting *Aehegma v. Aehegma,* 8 *Haw.App.* 215, 221, 797 *P.2d* 74, 79 (1990))); *Bright v. Kuehl,* 650 *N.E.2d* 311, 315 (Ind.Ct.App.1995) (holding that in context of claim for compensatory damages arising out of cohabitation, "a party who cohabitates with another without subsequent marriage is entitled to relief upon a showing of an express contract or a viable equitable theory such as an implied contract or unjust enrichment"); *Davis v. Misiano,* 373 *Mass.* 261, 366 *N.E.2d* 752 (1977) (holding that unmarried partners have no right to support or alimony); *Wilcox v. Trautz,* 427 *Mass.* 326, 330, 693 *N.E.2d* 141, 145 (1998) (explaining that Massachusetts "do[es] not recognize common law marriage, do[es] not extend to unmarried couples the rights possessed by married couples who divorce, and reject[s] equitable remedies that might have the effect of dividing property between unmarried parties"); *Hudson v. DeLonjay,* 732 *S.W.2d* 922, 927 (Mo.Ct.App.1987) (stating that "[t]he relevant inquiry is whether there was an agreement, either express or implied in fact, between the parties which was supported by valid consideration ... even though the parties' contemplation of cohabitation may have been the reason for their entering into such an agreement at the outset"); *Taylor v. Frost,* 202 *Neb.* 652, 656, 276 *N.W.2d* 656, 658 (1979) (adopting rule that " '[a] bargain in whole or in part for or in consideration of illicit sexual intercourse or of a promise thereof is illegal; but subject to this exception such intercourse between parties to a bargain previously or subsequently formed does not invalidate it'" (quoting *Restatement of Contracts* § 589)); *Western States Constr., Inc. v. Michoff,* 108 *Nev.* 931, 937, 840 *P.2d* 1220, 1224 (1992) (holding that "[u]nmarried couples who

cohabit have the same rights to lawfully contract with each other regarding their property as do other unmarried individuals" (citing *Hay v. Hay,* 100 *Nev.* 196, 199, 678 *P.*2d 672, 674 (1984))); *Dominguez v. Cruz,* 95 *N.M.* 1, 2, 617 *P.*2d 1322, 1323 (App.1980) (holding that "if an agreement such as an oral contract can exist between business associates, one can exist between two cohabiting adults who are not married if the essential elements of the contractual relationship are present" (footnote omitted)); *Suggs v. Norris,* 88 *N.C.App.* 539, 541, 364 *S.E.*2d 159, 161 (1988) (allowing "recovery by a plaintiff partner to an unmarried but cohabiting or meretricious relationship, from the other partner's estate, for services rendered to or benefits conferred upon the other partner through the plaintiff's work in the operation of a joint business when the business proceeds were utilized to enrich the estate of the deceased partner"); *Shuraleff v. Donnelly,* 108 *Or.App.* 707, 710, 817 *P.*2d 764, 766 (1991) (reaffirming that " 'courts, when dealing with the property disputes of a man and a woman who have been living together in a nonmarital domestic relationship, should distribute the property based upon the express or implied intent of those parties' " (quoting *Beal v. Beal,* 282 *Or.* 115, 123, 577 *P.*2d 507, 510 (1978))); *Knauer v. Knauer,* 323 *Pa.Super.* 206, 228, 470 *A.*2d 553, 564 (1983) (finding "no public policy in Pennsylvania against entertaining suits between non-married cohabitors in property disputes"); *Doe v. Burkland,* 808 *A.*2d 1090, 1093 (R.I. 2002) (holding that assisting cohabitant in career and providing homemaking, business, consulting and counseling services is not illegal consideration "irrespective of the fact that the parties may have been living together when they entered into the contract"); *Connell v. Francisco,* 127 *Wash.*2d 339, 349–51, 898 *P.*2d 831, 836–37 (1995); *Watts v. Watts,* 137 *Wis.*2d 506, 516, 405 *N.W.*2d 303, 307–08 (1987) (explaining that "statute providing guidelines for property division upon dissolution of marriage, legal separation, etc., could also be applied to divide property acquired by unmarried cohabitants in what was 'tantamount to a marital family except for a legal marriage' " (quoting *Warden v. Warden,* 36 *Wash.App.* 693, 698, 676 *P.*2d 1037, 1039 (1984))); *Shaw v. Smith,*

964 *P.*2d 428, 435, 438 (Wyo.1998) (noting that "a cohabiting couple can enter into binding contracts as long as the agreement complies with Wyoming's law of contracts" and that it "will not ... reject a claim based on well-established principles of contract or equity solely because the parties have cohabited").

Two states, by statute, have required that palimony claims must satisfy the statute of frauds in order to be enforceable. Minnesota provides that

[i]f sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock, or who are about to commence living together in this state out of wedlock, is enforceable as to terms concerning the property and financial relations of the parties only if: (1) the contract is written and signed by the parties, and (2) enforcement is sought after termination of the relationship.

[*Minn.Stat.* § 513.075 (2007).]

Its legislature made that point clear when it enjoined that

[u]nless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

[*Minn.Stat.* § 513.076 (2007).]

Texas likewise provides that a

promise or agreement [made on consideration of marriage or on consideration of nonmarital conjugal cohabitation] is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

[*Tex. Bus. & Com.Code Ann.* § 26.01 (2007).]

*See also Zaremba v. Cliburn,* 949 *S.W.*2d 822, 825–28 (Tex.App. 1997) (applying statute of frauds to palimony case). Finally, as a matter of decisional law, Florida and North Dakota also do not acknowledge a palimony claim in the absence of a writing confirming the agreement of support. *Posik v. Layton,* 695 *So.*2d 759 (Fla.Dist.Ct.App.1997); *Kohler v. Flynn,* 493 *N.W.*2d 647, 649 (N.D.1992) (barring both palimony claims and equitable division claims by unmarried cohabitants, explaining that "[i]f live-in com-

panions intend to share property, they should express that intention in writing").

The lesson to be gleaned is clear: nowhere—save for those limited instances where a claim for palimony is based on a writing confirming an agreement of support—can a palimony claim be sustained absent proof of cohabitation. The rationale undergirding that obvious rule is equally self-evident: because they are easy to allege yet inherently contrary to fundamental legal concepts that have governed our jurisprudence for centuries, palimony claims must be viewed with great skepticism and must be subjected to harsh and unremitting scrutiny. It is to how this Court has guarded against sham palimony claims that I now turn.

## III.

In *Kozlowski,* we adopted the rule that "an agreement between *adult parties living together* is enforceable to the extent it is not based on a relationship proscribed by law, or on a promise to marry." *Supra,* 80 *N.J.* at 387, 403 *A.*2d 902 (emphasis supplied). The insistence on "adult parties living together" as a condition precedent to any palimony claim is utterly unremarkable as that condition appears explicitly in *Marvin, supra,* the decision on which *Kozlowski* firmly rests. In *Marvin,* the Supreme Court of California "base[d its] opinion on the principle that *adults who voluntarily live together* and engage in sexual relations are nonetheless as competent as any other persons to contract respecting their earnings and property rights." *Supra,* 134 *Cal.Rptr.* at 825, 557 *P.*2d at 116 (emphasis supplied). In *Roccamonte,* we similarly allowed a palimony claim in circumstances where the parties "lived together as husband and wife." *Supra,* 174 *N.J.* at 386, 808 *A.*2d 838. Clearly, this Court consistently has held that "living together as husband and wife"—read "cohabitation" [3]—is a necessary condition precedent to a palimony claim.

---

[3] Cohabitation is defined as "[t]o live together as spouses" or "[t]o live together in a sexual relationship when not legally married." *Webster's II New College Dictionary* 218 (1995). This Court has defined the term as follows:

Even California—the birthplace of the *Marvin*/palimony cause of action—requires cohabitation as a prerequisite to recovery on a palimony claim. *Taylor v. Fields,* 178 *Cal.App.*3d 653, 660–65, 224 *Cal.Rptr.* 186 (Cal.Ct.App.1986) (holding that cohabitation was prerequisite to recovery under *Marvin*). California explains that "[c]ohabitation is necessary not in and of itself, but rather, because from cohabitation flows the rendition of domestic services, which services amount to lawful consideration for a contract between the parties." *Bergen v. Wood,* 14 *Cal.App.*4th 854, 858, 18 *Cal.Rptr.*2d 75 (Cal.Ct.App.1993). More to the point, California makes the critical "observation that if cohabitation were not a prerequisite to recovery, every dating relationship would have the potential for giving rise to such claims, a result no one favors[,]" *ibid.,* because "a recovery under *Marvin* 'requires a showing of a stable and significant relationship arising out of cohabitation.' " *Cochran v. Cochran,* 89 *Cal.App.*4th 283, 291, 106 *Cal.Rptr.*2d 899 (Cal.Ct. App.2001) (quoting *Bergen, supra,* 14 *Cal.App.*4th at 857, 18 *Cal.Rptr.*2d 75).

Those concerns rightly animated the Appellate Division's decision below. Noting that "absent cohabitation, plaintiff's cause of action could not succeed[,]" *Devaney v. L'Esperance,* 391 *N.J.Super.* 448, 452, 918 *A.*2d 684 (App.Div.2007), the panel cited with approval to *Levine v. Konvitz,* 383 *N.J.Super.* 1, 890 *A.*2d 354 (App.Div.), *certif. denied,* 186 *N.J.* 607, 897 *A.*2d 1061 (2006), for "the policy rationale behind the law's insistence on cohabitation as

---

Cohabitation is not defined or measured solely or even essentially by "sex" or even by gender.... The ordinary understanding of cohabitation is based on those factors that make the relationship close and enduring and requires more than a common residence, although that is an important factor. Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.

[*Konzelman v. Konzelman,* 158 *N.J.* 185, 202, 729 *A.*2d 7 (1999) (citation omitted).]

a necessary element to a cause of action for palimony." *Devaney, supra*, 391 *N.J.Super.* at 452, 918 *A.*2d 684. *Levine*'s rationale deserves repeating at length:

> Although the quality, nature, and extent of the consideration sufficient to sustain a palimony action may differ depending on all the circumstances, we are satisfied that the rendering of such consideration must be done in a setting of cohabitation. Without such a bright-line requirement, the concept of "marital-type" relationship is unacceptably vulnerable to duplicitous manipulation.
>
> Requiring cohabitation as an element of a palimony action also provides a measure of advance notice and warning, to both parties to a relationship, and to their respective family members, that legal and financial consequences may result from that relationship. In this context, cohabitation requires the demonstrable act of setting up a household together. Thus, in contrast to an extramarital affair, even a long-term one, cohabitation announces to the ones most affected by the existence of the relationship, the innocent spouse and dependent children, that defendant has entered into a relationship that may result in significant and long-term impairment of family assets.
>
> [*Levine, supra*, 383 *N.J.Super.* at 10–11, 890 *A.*2d 354.]

The reasons for requiring cohabitation as a condition precedent to a palimony claim could not be stated any clearer; in contrast, the majority's rejection of that safety valve condition precedent is unexplained and without basis.

## IV.

It is against that backdrop—one that is neither explored nor analyzed by the majority, either in respect of its reasoning or its ultimate implications—that the majority announces the unceremonious discard of cohabitation as a prerequisite for a palimony cause of action. No doubt, there is a strong emotional basis for a palimony claim. As stated in *Roccamonte*,

> The principle we recognized and accepted [in *Kozlowski* and *Crowe*] is that the formation of a marital-type relationship between unmarried persons may, legitimately and enforceably, rest upon a promise by one to support the other. A marital-type relationship is no more exclusively dependent upon one partner's providing maid service than it is upon sexual accommodation. It is, rather, the undertaking of a way of life in which two people commit to each other, foregoing other liaisons and opportunities, doing for each other whatever each is capable of doing, providing companionship, and fulfilling each other's needs, financial, emotional, physical, and social, as best as they are able. And each couple defines its way of life and each partner's expected contribution to it in its own way. Whatever other consideration may be involved, the entry into such a relationship and then

conducting oneself in accordance with its unique character is consideration in full measure. There is no doubt that plaintiff provided that consideration here until her obligation was discharged by [her cohabitant's] death.

[*Supra*, 174 *N.J.* at 392–93, 808 *A.*2d 838.]

Yet, as we have been well warned, it is the very nature of a palimony claim that commands caution and strict proof requirements, and a distinct cohabitation requirement stands as a formidable bulwark against emotion-based yet meritless claims.

Because the majority concedes that plaintiff cannot satisfy even the lesser standard the Court sets forth, the end result in this case is the dismissal of plaintiff's palimony claim. That result should have been reached for a different reason—because plaintiff has failed to prove the element of cohabitation necessary to sustain a palimony claim—and not for the reasons tendered by the majority. Therefore, I concur solely in the result.

*For affirmance as modification*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*For concurrence*—Justice LONG—1.

*For concurrence in result*—Justice RIVERA-SOTO—1.